Argued May 4, reargued and submitted December 5, 1978,
reversed June 19, petition for rehearing denied July 5, 1979

# DUNCAN, *Respondent,*

*v.*

# AUGTER, *Appellant,.*
## (No. TC 76-218-L-3, SC 25390)

596 P2d 555

Hugh B. Collins, of Collins, Velure & Heysell, Medford, argued the cause and filed briefs for appellant.

William F. Ferguson, of Grant, Ferguson & Carter, Medford, argued the cause and filed briefs for respondent.

LINDE, J.

**LINDE, J.**

By virtue of a 1971 statute, an otherwise untimely damage action arising from medical treatment may be commenced within two years of the actual or reasonable discovery of a "fraud, deceit, or misleading representation" that caused the action not to be timely brought. ORS 12.110(4). The issue before us is whether a surgeon's statement that he removed plaintiff's appendix was a "misleading representation" permitting a delayed commencement of an action against the surgeon, if the statement led plaintiff's physicians not to suspect the cause of her subsequent abdominal illness.

The defendant surgeon in this case operated on plaintiff on August 22, 1968, to remove her gallbladder. There had been no prior discussion of an appendectomy, but defendant testified that he removed plaintiff's appendix as "an incidental surgical procedure along with the gallbladder procedure." There was testimony from which a jury could find that immediately after the operation, defendant told plaintiff that he had removed her appendix.

Plaintiff continued to suffer pains in her abdomen. In 1971, abdominal surgery by two other surgeons revealed suture material of the type used in ligating an appendix stump in a large abscess where the appendix had been. In further exploratory surgery in August, 1975, Doctors Watson and Meyerding found a large number of adhesions, or scar tissue, surrounding the abdominal organs and making it difficult to locate and remove the source of plaintiff's trouble. After taking out her right ovary, they discovered a piece of tissue adhering to the pelvic wall behind the location of the ovary, which a pathologist identified as the distal end or tip of the appendix. These doctors testified that in their opinion, plaintiff's seven year history of abdominal problems from 1968 to 1975 resulted from bacterial contamination spreading from this fragment of her appendix.

[725]

In her complaint, filed on February 4, 1976, plaintiff alleged that defendant had caused her injuries by negligently performing the 1968 operation and leaving a portion of the appendix in her body. To meet defendant's demurrer, she alleged in an amended complaint that shortly after the 1968 surgery, defendants advised her that they had removed her appendix,[1] "which representation was a false and misleading representation which was not discovered by Plaintiff until subsequent surgery on August 12, 1975, by other physicians to correct her physical ailments." By demurrers and subsequent motions, defendant unsuccessfully objected to the adequacy of plaintiff's pleading and proof that her action against defendant was delayed past the usual period of limitation by a misleading representation. The trial resulted in a verdict for plaintiff, and defendant appeals.

The governing statute of limitations is ORS 12.110(4). It states:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."[2]

This statute provides three measures for the timeliness of a damage action for medical or dental malpractice. The first sentence specifies the starting date for

[1] The court granted an involuntary nonsuit with respect to the original codefendant.

[2] ORS 12.160, not relevant here, allows an extension to plaintiffs handicapped by imprisonment, youth, or insanity.

the normal two year limitation to be the date when plaintiff's injury is or should have been discovered. The next clause imposes a five year limit measured from the date of defendant's allegedly tortious act or omission. However, if a plaintiff's failure to commence an action within this five year limit can be attributed to "fraud, deceit or misleading representation," the final clause allows the plaintiff to sue on the original cause of action for another two years from the date that the deception or misleading representation is or should have been discovered.[3] Plaintiff relied on this final clause in bringing her complaint seven and one-half years after the original surgery.

On its face the statute is no model of draftsmanship. Written in the passive voice, it for instance does not specify whose actual or potential discovery of the injury or of the deception starts the two year periods, whether it is the patient, or his physician, or the plaintiff in an action by someone other than the patient, or perhaps any of these. It specifies neither by whom nor to whom the deceptive representation must have been made. Of most direct importance to the present case is the question what constitutes a "misleading representation" for purposes of postponing the period within which an action must be brought. After the initial hearing by a department of this court, we therefore set the case down for reargument before the whole court and asked the parties for additional argument on the legislative history of the provision at issue.[4] This history may be summarized as follows:

---

[3] The maximum time to commence an action is limited by ORS 12.115(1):

"In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

[4] We asked the parties to address these questions:

"1. In interpreting the statute generally, when it is claimed that an action is timely because brought within two years of discovery (or reasonable opportunity to discover) that the action was delayed by a statement which is alleged to be a 'fraud, deceit or misleading

As first enacted in 1967, ORS 12.110(4) made the date of discovery the start of the two year limitation when the injury resulted from leaving a foreign substance in a patient's body, subject to a seven year limit from the date of the operation. It was amended in 1969 to eliminate the reference to foreign substances and extend these limits to all personal injury actions arising from any medical, surgical or dental treatment, omission or operation.

In 1971, Senate Bill 43 proposed to reduce the time limits of ORS 12.110(4) to one year from the date an injury should have been discovered and four years overall. According to its proponents, the bill was intended as a means to slow the growth of medical malpractice actions and the attendant costs or unavailability of liability insurance. S. B. 43 was amended in the Senate to retain the existing two year limit from the discovery date and to reduce the existing seven year limit from the date of the act or omission to five rather than four years. The provision now before us, adding a two year period to sue following the discovery of a deceptive representation that prevented an earlier action, originated in the judiciary committee of the House of Representatives. It was later adopted by the Senate without objection. Unfortunately, the available records offer only sparse clues bearing on the intended scope of this amendment.

representation,' is it required that the statement have been made when plaintiff was known to be concerned about symptoms or other indications of a possible medical problem? Must the statement be independent of and subsequent to the initial treatment performed by the person who makes the statement?

"2. As applied to this case, may the statement claimed to be relied upon be the initial statement by the doctor to the patient of the treatment performed? Could the statement of the doctor in this case, that he has performed an appendectomy, give rise to any expectations by the patient that the operation had been skillfully performed and would not cause her future difficulty which would not have arisen from the performance of the operation itself?

"3. In deciding whether a delay in filing an action was caused by a 'misleading representation,' is it a factor whether the person making the representation knew or should have known of its false or misleading character?"

A main point of disagreement between the parties is whether the amendment is confined to a knowing misrepresentation by the defendant. Defendant contends that it is so confined, and that plaintiff's pleading, quoted above, did not allege nor did plaintiff prove such a knowing misrepresentation. Plaintiff counters that the words "fraud" and "deceit" cover intentional or knowing misrepresentations, and that the inclusion of the term "misleading representation" in the amendment would be a redundancy if it were not meant to add a class of representations that were not intended to mislead or known to be false. She points to one recorded statement before the judiciary committee to show that the amendment was drafted to meet objections that a physician could delay a malpractice action against himself by continuing to treat the patient and concealing the source or nature of the patient's difficulty. However, while this concern apparently led the committee to have the amendment prepared, it does not follow that either the concern or the amendment was limited to a physician's intentional concealment of his prior negligence until the statute of limitations had run. We must look beyond this isolated statement to see what scope of the term "misleading representation" is consistent both with the House committee's objective in adding the amendment and the legislature's objective in enacting ORS 12.110(4) with that amendment included.

The initial purpose of S. B. 43, as we have said, was to roll back in some degree the exposure of the medical profession to malpractice actions after a time when the circumstances of the alleged malpractice have become difficult to litigate. While the House committee was prepared to accept this purpose, it was concerned about the possibility that the patient could be kept in ignorance of an actionable injury. The question is whether the principle on which the legislature allowed the patient an additional two years to sue if that ignorance was due to "fraud, deceit or misleading representation" was primarily to deny the treating

[729]

physician the benefit of his breach of trust in conceal-
ing information, or to recognize the helplessness of the
patient who relies on misleading medical information
irrespective of the doctor's good or bad faith. Each
objective of the amendment, if clearly intended, would
point to different resolutions of the ambiguities we
have noted above. For instance, if the reason justify-
ing the extension of the statute of limitation when the
patient had been misled was to penalize the culpable
physician, it would follow that the deceptive statement
would have to be made directly or indirectly by the
defendant doctor, that it must have been made after he
knew of the possibility of a malpractice action and
with a view to avoiding or minimizing that possibility,
and that he knowingly gave false or incomplete infor-
mation. On the other hand, if the principal object of
the amendment was to protect the patient who delays
an action upon a known injury because he is misled
about its cause rather than dilatory, each of these
prerequisites of the "misleading representation"
would be immaterial as long as the patient, or another
plaintiff suing for the patient's injuries, was in fact
misled into delaying his action.

■  The evolution of the statute leads us to believe that,
as is not uncommon, the amendment was drafted with-
out choosing between these alternative premises or
their consequences. Its adoption evidently was regard-
ed as compatible with the original overall objective of
restricting rather than enlarging the period of limita-
tion for malpractice actions in most cases.[5] It

---

[5] Plaintiff's supplemental brief reports that after the action in the
House of Representatives, at the May 25, 1971, meeting of the Senate
Judiciary Committee, the chairman asked a member of the committee to
study the House amendments and discuss them with the representative of
the interested medical associations. The committee's minutes of May 28
report:

"Senator Browne indicated she had discussed the House amendments
to Senate Bill 43 with Mr. John Misko who said he had no objection to
the bill as amended and thought it restated existing law. The commit-
tee unanimously agreed to move to concur with the House amend-
ments."

seems a fair reading that the amendment was intended to give the misinformed patient additional time to sue, but only to the extent that the defendant was responsible for the misinformation. ORS 12.110(4) must have been meant to accommodate in practice the competing policies entering into its enactment.

Accordingly, we do not believe that a plaintiff bringing a belated malpractice action has to plead or prove that the defendant deliberately misled him by an explicit or implicit representation. Such a deliberate deception would be "fraud" or "deceit" under the amendment without the addition of "misleading representation." The essence of this phrase is that the representation misleads the plaintiff, not that it is fraudulent or deceitful on the part of the defendant. Moreover, it must be recalled that the role of the amendment is not to give an injured party a new claim for the misrepresentation but only to relieve him of default for an excusable delay in bringing his action on the original injury. It is immaterial to that purpose whether he was misinformed deliberately or by mistake.

On the other hand, the amendment was not intended to excuse such a delay whenever a plaintiff in fact acted, or failed to act, on misleading information. First, the recorded comments in the House judiciary committee, brief as they are, indicate that the amendment was addressed only to misleading representations for which the defendant physician is responsible. Secondly, the same comments suggest that the committee was primarily concerned with representations made after the act or omission that is alleged to constitute the malpractice, although whether the amendment is limited to such subsequent representations is a more difficult question. On that question, we think that if a defendant has deliberately misstated a diagnosis or a proposed treatment before performing or omitting the act on which plaintiff's claim is predicated, and the plaintiff as a result fails to pursue

[731]

the claim until he discovers the misrepresentation, there is no obvious reason why the final clause of ORS 12.110(4) does not apply as much as when the misrepresentation is made after the act or omission. And once the clause refers to statements made prior to the act or omission as well as afterwards, there is no apparent reason why this does not include a "misleading representation" as well as fraud or deceit.

■ However, we think that deliberate deceptive statements differ from merely careless or innocent misleading representations in one important respect. Such an innocent contemporaneous representation must misrepresent something other than the careful performance or the success of the very treatment or operation whose failure is the basis of plaintiff's subsequent complaint. Otherwise the final clause of ORS 12.110 could entirely displace the preceding clauses whenever a plaintiff pleaded that he relied on defendant's representations of a successful treatment and did not discover his cause of action until he discovered that these representations, though perhaps sincere, were false. We see nothing to suggest that this kind of bootstrap justification for a delayed claim falls within the legislative objective of that clause.

In the present case, the complaint was filed more than seven years after the date of the alleged negligent acts, and defendant demurred on that ground. The allegation on which plaintiff relied to make the complaint timely under the last clause of ORS 12.110(4) reads:

"Shortly after said surgery, Defendants advised Plaintiff they had removed her appendix which representation was a false and misleading representation which was not discovered by Plaintiff until subsequent surgery on August 12, 1975, by other physicians to correct her physical ailments."

Standing alone, that allegation might be broad enough to cover a situation in which a defendant in fact had made no effort at all to remove the plaintiff's appendix but represented that he did so, and as a result

prevented timely diagnosis of plaintiff's later illness. However, the complaint goes on to state that defendant was negligent in the manner in which he attempted to remove the appendix and in leaving "a portion" of the appendix in plaintiff's body. Thus it appeared on the face of the complaint that the only "misleading representation" pleaded to overcome the time limits fixed in the first two provisions of ORS 12.110 was defendant's contemporaneous statement that he performed the act whose negligent performance is the gravamen of the complaint. As stated above, this cannot suffice as a "misleading statement" under the statute, since the consequence of finding that one has been misled whenever one discovers the allegedly unprofessional treatment contradicts the object of ORS 12.110(4). There is no claim that defendant knew that he had not removed the entire appendix or that, informed about plaintiff's later abdominal difficulties, he reassured her or her physicians that these difficulties could not relate to the presence of infected appendix tissue. Without such a pleading, defendant's demurrer should have been sustained.

Reversed.