Argued and submitted May 3, 1985, reversed and remanded January 29, reconsideration denied April 11, petition for review denied June 17, 1986 (301 Or 240)

SKUFFEEDA,
*Appellant,*

*v.*

ST. VINCENT HOSPITAL AND MEDICAL CENTER,
assumed business name for
Sisters of Providence in Oregon,
a nonprofit corporation,
*Defendant,*

STARR et al,
*Respondents.*

(A8310-06574; CA A33359)

714 P2d 235

Arthur C. Johnson, Eugene, argued the cause for appellant. With him on the briefs were Jane N. Bolin, Claudia Ingram and Johnson, Quinn, Clifton & Williams, P.C., Eugene.

Allan M. Muir, Portland, argued the cause for respondents Starr, Chapman, Wood, Ahmad and Garrison. With him on

the brief were Ridgway K. Foley, Jr. and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Emil R. Berg, Portland, argued the cause for respondents Haber, Devine and Phelan. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals a judgment for defendant doctors and radiologists. The court granted defendants' motions to dismiss plaintiff's third amended complaint on the ground that ORS 12.110(4), the Statute of Limitations, bars all of plaintiff's claims for medical malpractice and fraud. ORCP 21. Counts III and IV are against "defendant doctors" Starr, Wood, Chapman and Ahmad, who performed the open heart surgery, and Garrison, who provided cardiological care, and counts V and VI are against "defendant radiologists" Haber, Devine and Phelan.[1] We take as true for purposes of this appeal all of plaintiff's well pleaded allegations. *Brennen v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979); *Seal v. Polehn*, 284 Or 259, 586 P2d 345 (1978). We reverse.

Plaintiff alleged that he underwent open heart surgery on March 22, 1978, and that during the surgery a metal screw dropped from the surgical equipment into the surgical opening and lodged in the pericardium next to plaintiff's heart muscle. Following the surgery, defendant doctors ordered x-rays of plaintiff's chest. Defendant radiologists did the x-ray studies, which showed the presence of the metal screw next to plaintiff's heart. All defendants read the x-ray studies.

In count III, plaintiff alleged that he suffered harm as a result of the negligence of defendant doctors:

"1. In using surgical equipment which was faulty and not well maintained and which could become disassembled during surgery.

"2. In failing to adequately inspect the surgical equipment after surgery to determine that all parts were present and nothing was left behind in the surgical opening.

"3. In failing to adequately inspect and remove the metallic foreign object from Plaintiff's pericardial region after learning that all pieces were not present on the surgical equipment after removal from Plaintff's surgical opening.

"4. In failing to read the x-rays and/or x-ray reports which showed the presence of the metallic foreign object present in Plaintiff's pericardial region following open heart surgery.

---

[1] Defendant St. Vincent Hospital is not a party to this appeal. Plaintiff had alleged Counts I and II against the hospital.

"5. In failing to remove the metallic foreign object or screw from Plaintiff's pericardial region promptly once learning that it was present in Plaintiff's pericardial region following the open heart surgery.

"6. In failing to advise Plaintiff that the metal foreign object or screw was present in his pericardial region and was lodged next to his heart after they determined its presence from the post-operative x-ray studies."

He also alleged in the same count that the doctors had made false and misleading representations to him concerning his post-operative condition which prevented him from discovering their negligence until January, 1983.[2]

In count IV, plaintiff alleged that defendant doctors perpetrated a fraud on him, because they discovered the screw when they examined the x-ray studies but intentionally or recklessly made representations to him that his post-operative condition was normal. Plaintiff alleged that the representations were false, that he relied on them and had a right to rely on them and that, as a result, he suffered substantial general and special damages. He also asked for punitive damages.

In count V, plaintiff alleged that defendant radiologists performed and interpreted the x-ray studies that showed the screw next to plaintiff's heart and that they were negligent

"[i]n failing to see that Plaintiff was advised of the fact that the x-rays disclosed that he had a metal foreign object or screw laying [sic] next to his heart following the open heart surgery."

He also alleged that he suffered resulting damage. Furthermore, plaintiff alleged that he relied upon defendant radiologists' representations that his post-operative condition was normal, which prevented him from discovering his claim until January, 1983.

In count VI, plaintiff alleged that defendant radiologists perpetated a fraud on him, because they intentionally or recklessly made false representations to him that the x-rays following the surgery were normal, that they

---

[2] Plaintiff alleges that, in January, 1983, another physician told him that he had a screw lodged against his pericardium.

intended that he rely on them, that he did rely on them and had a right to do so and that, as a result, he did not have the screw immediately removed and suffered substantial general and special damages. He also asked for punitive damages.

On October 21, 1983, five and one-half years after the surgery, plaintiff filed this action. ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

Plaintiff asserts that he filed belatedly because of defendants' "fraud, deceit or misleading misrepresentation." Accordingly, he argues, the action is not barred, because he filed it within two years of the date that he discovered or in the exercise of reasonable care should have discovered defendants' "fraud, deceit or misleading representation." Defendants respond that, even if their misrepresentations delayed plaintiff's discovery of their negligence, the statute was not tolled because of the rule of *Duncan v. Augter,* 286 Or 723, 596 P2d 555 (1979).

In *Duncan,* the issue was whether a surgeon's statement that he had removed the plaintiff's appendix was a "misleading misrepresentation" within ORS 12.110(4). The plaintiff sued the surgeon on August 23, 1968, seven and one-half years after he had removed her gallbladder. Immediately after that operation the defendant told the plaintiff that, incident to the gallbladder removal, he had also removed her appendix. The plaintiff, however, continued to suffer abdominal pains. In 1975 surgeons discovered a fragment of her appendix adhering to the pelvic wall behind an ovary. The abdominal pains from 1968 to 1975 had resulted from bacterial contamination from that fragment. Relying on the final clause of ORS 12.110(4), she alleged in her complaint that the

defendant's advice that he had removed her appendix "was a false and misleading representation which was not discovered by the plaintiff until subsequent surgery on August 12, 1975, by other physicians to correct her physical ailments." The defendant relied on ORS 12.110(4), lost in the trial court and appealed.

The Oregon Supreme Court reversed. It held that, although a misrepresentation need not be fraudulent or deceitful to toll the statute, a misleading statement that is not fraudulent or deceitful does not toll the statute if it goes to the "gravamen of the complaint."

> "We think that deliberate deceptive statements differ from merely careless or innocent misleading representations in one important respect. Such an innocent contemporaneous representation must misrepresent something other than the careful performance or the success of the very treatment or operation whose failure is the basis of plaintiff's subsequent complaint. Otherwise the final clause of ORS 12.110 could entirely displace the preceding clauses whenever a plaintiff pleaded that he relied on defendant's representations of a successful treatment and did not discover his cause of action until he discovered that these representations, though perhaps sincere, were false. We see nothing to suggest that this kind of bootstrap justification for a delayed claim falls within the legislative objective of that clause.

> "* * * * *

> "Defendant's contemporaneous statement that he performed the act whose negligent performance is the gravamen of the complaint * * * cannot suffice as a 'misleading statement' under the statute, since the consequence of finding that one has been misled whenever one discovers the allegedly unprofessional treatment contradicts the object of ORS 12.110(4)." 286 Or at 732.

The court observed that the plaintiff made no claim (1) that defendant *knew* that he had not removed the entire appendix or (2) that, informed about the plaintiff's later abdominal difficulties, the defendant had reassured her or her physicians that the difficulties could not relate to the presence of infected appendix tissue. "Without such a pleading, defendant's demurrer should have been sustained." 286 Or at 733.

■ ■ Under *Duncan v. Augter,* a doctor's fraud or deceit will toll the five-year limitation period if, because of the fraud

or deceit, the plaintiff fails to discover the doctor's negligence. A doctor's "misleading representation" to a patient, on the other hand, will not toll that period if the representation is made innocently *and* concerns the very act "whose negligent performance is the gravamen of the complaint." 286 Or at 733. Furthermore, fraud, deceit or a misleading representation tolls the period only to the extent that it permits an action against the person responsible for the misinformation. 286 Or at 731.

■ In count III, plaintiff alleged six specifications of negligence against defendant doctors and also that they made misleading representations to him that tolled the statute. He alleged that, although defendant doctors should have known of the presence of the screw, they kept him from discovering their negligence when they failed to tell him of the screw and falsely represented to him that the x-rays showed nothing abnormal. Plaintiff also alleged that all defendant doctors advised him before he was discharged from the hospital that his post-operative condition was normal. Furthermore, plaintiff alleged that all defendant doctors participated in his discharge from the hospital without informing him that the screw was present. We conclude that each doctor's participation in plaintiff's discharge constituted a representation that the post-operative x-rays showed nothing abnormal.[3] Plaintiff, therefore, alleged a "misleading representation" within the meaning of ORS 12.110(4).

■ The misleading representation, however, goes to the gravamen of two of plaintiff's specifications of negligence: that defendant doctors were negligent when they failed to read the x-rays which showed the existence of the screw and failed to advise him about the screw. Count III alleged that this misrepresentation was careless, not deceitful or fraudulent.[4] Accordingly, it does not toll the five-year period as to these two specifications.

---

[3] A party need not make an affirmative statement to misrepresent. *Caldwell v. Pop's Homes, Inc.,* 54 Or App 104, 113, 634 P2d 471 (1981); *Paul v. Kelley,* 42 Or App 61, 65, 599 P2d 1236 (1979). Furthermore, because of the special nature of the doctor-patient relationship, a doctor has an affirmative duty to disclose the results of diagnostic tests to his patient. Prosser and Keeton, *Law of Torts* 738, § 106 (5th ed 1984).

[4] An "innocent" misrepresentation under *Duncan v. Augter* includes a careless one.

■■ The alleged misrepresentation, however, does not go to the gravamen of plaintiff's three specifications that the doctors were negligent in performing the heart surgery. Plaintiff pleaded that defendant doctors knew or should have known on the basis of the x-rays that a screw was lodged near plaintiff's heart. A misrepresentation as to the result of a post-operative procedure is not just an assurance that the operation "went well." It is an independent breach of a doctor's duty to the patient and, if it prevents the patient from discovering the doctor's careless performance of the surgery, it tolls the statute, even if it is "innocent." ORS 12.110(4), therefore, does not bar three of plaintiff's specifications, and the court erred in dismissing count III.[5]

■ In count V, plaintiff alleged that defendant radiologists were negligent, because they failed to see that he was advised that the x-rays disclosed the existence of the screw. Plaintiff also alleged that defendant radiologists' negligence was a misleading misrepresentation of his condition and tolls the statute. In this claim, however, the "tolling misrepresentation" concerns the very act whose negligent performance is the gravamen of plaintiff's negligence claim against these defendants. Under *Duncan v. Augter,* the statute was not tolled. The court correctly dismissed count V in its entirety.

■ In counts IV and VI, plaintiff alleged that the misrepresentations of both sets of defendants concerning the screw were fraudulent and caused harm. Although ORS 12.110(4) applies to any "action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation," we hold that an action for fraud is not one that arises out of medical treatment and that it falls outside the ambit of ORS 12.110(4). The legislature enacted the five-year limitation period to protect medical practitioners from long delayed malpractice actions. It did not intend to protect a practitioner in actions based on fraud. Accordingly, ORS 12.110(4) does not bar counts IV and VI.

The Statute of Limitations for fraud, ORS 12.110(1), is two years from the time that plaintiff discovered or should

---

[5] Although its sufficiency is not challenged on appeal, specification of negligence 5 in count III does not appear to allege facts that could constitute negligence.

have discovered the fraud. Plaintiff alleged that he did not discover the fraud until January, 1983, less than one year before he filed this action. He has pleaded enough to survive a motion to dismiss. Accordingly, the court erred in dismissing counts IV and VI.

■     Finally, defendant radiologists argue that plaintiff did not sufficiently plead the reasonableness of his failure to discover his damage sooner. *Salem Sand v. City of Salem,* 260 Or 630, 492 P2d 271 (1971). We disagree. Plaintiff alleged that all defendants misrepresented and concealed his post-surgical condition and that he was entitled to and did rely on their representations. He pleaded facts that show why he did not discover the presence of the screw sooner than he did. As *Salem Sand v. City of Salem, supra,* states, "Ordinarily the question of whether reasonable diligence was exercised is a question of fact for the jury." 260 Or at 637.

Reversed and remanded for further proceedings not inconsistent with this opinion.