Argued and submitted October 30, 1985, affirmed January 29, 1986

# JARVIS,
*Respondent,*

*v.*

# ST. CHARLES MEDICAL CENTER,
*Appellant.*

(33751; CA 33296)

713 P2d 620

Patrick J. Kouba, Eugene, argued the cause for appellant. With him on the briefs was Atherly, Butler & Burgott, Eugene.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant St. Charles Medical Center appeals from a judgment for plaintiff, based on the negligence of nurses whom it employed. We affirm.

Plaintiff suffered a leg fracture in a skiing accident. Her physician, defendant Sulkosky, surgically reduced the fracture at St. Charles on February 17, 1981. In the course of the surgery, Sulkosky observed and treated symptoms of compartment syndrome, a condition in which swelling or other causes of pressure prevent blood from reaching a muscle compartment. If not promptly treated, the condition can result in the death of muscle tissue. The objective of treatment is to relieve pressure, and the optimum method is usually a surgical procedure called a "fasciotomy."

Sulkosky was concerned after the surgery that the condition might develop in other muscle compartments of plaintiff's leg. Consequently, he left orders with the nursing staff to perform certain tests and observations on an hourly basis and to notify him if problems were to develop. On February 18, plaintiff displayed certain symptoms of compartment syndrome, which were alleviated after Sulkosky was called and spread the cast on the leg. Sulkosky conducted no further procedures in immediate response to the February 18 symptoms.

The alleged negligence of the nurses occurred on the night of February 19-20. The nurses' chart notes record very sporadic testing; the last relevant notation was made at 4 a.m., and it indicates that there was no change in circulation, movement or sensation. Sulkosky was not called during the night. When he examined plaintiff at 8:30 in the morning, her foot was white and there was no pulse in it. Sulkosky performed surgery approximately one hour later, and he observed that some muscle tissue was clinically dead. Although the pathology report showed that the tissue was viable at the time of the surgery, the death of the tissue was pathologically confirmed at a later time. Ultimately, some muscle tissue was removed and other procedures had to be undertaken, and plaintiff is restricted in the use of the leg.

Plaintiff brought this action against St. Charles and Sulkosky. Sulkosky entered into a settlement agreement with

plaintiff and was called as witness by her against St. Charles. The jury found for plaintiff. St. Charles' first assignment contends that the trial court erred by denying its motion for a directed verdict. St. Charles' theory is that Sulkosky's testimony did not establish "to a reasonable medical probability" that the "change in [p]laintiff's condition had existed long enough to have been discovered by the nursing staff in the exercise of reasonable care" and, therefore, plaintiff failed to prove that the nurses' negligence was the cause of her injury. Although Sulkosky did estimate that the changes in plaintiff's condition occurred sometime within the six-hour period preceding his 8:30 examination, he was unable to state with certainty that the changes had not first become noticeable as recently as immediately before the examination. Moreover, his testimony was offered as a "best opinion," rather than as a statement of a reasonable probability.

St. Charles' argument is somewhat circular: It posits that the nurses' failure to conduct and record the necessary tests and observations is a self-insulating omission, because neither Sulkosky nor anyone else could know as a certainty or a probability what the nurses would have discovered if they had performed their duty.

St. Charles relies on *Sims v. Dixon,* 224 Or 45, 355 P2d 478 (1960), and *Howerton v. Pfaff,* 246 Or 341, 425 P2d 533 (1967), for the proposition, stated in the latter case:

> "It is settled law in this state that medical testimony in a case of this kind is not sufficient if it fails to show with reasonable certainty that there was a causal connection between an accident and the injury * * *." 246 Or at 346.

Those cases are inapposite. The question in *Sims* and *Howerton* was whether a recognized condition was caused by a particular event; the question here is whether a condition became recognizable before a particular time. Sulkosky's opinion testimony, together with his description of the surrounding circumstances, supported the inference that there was a reasonable probability that the change in the condition of plaintiff's leg became discernible several hours before Sulkosky examined plaintiff on the morning of February 20. *See Hansen v. Bussman,* 274 Or 757, 549 P2d 1265 (1976).

Moreover, Sulkosky's testimony was not the only evidence that supported that inference. Plaintiff's chart

showed that no tests were performed by the nurses during the four and one-half hour period preceding Sulkosky's examination. There was testimony from St. Charles' expert witnesses that the muscle death was a gradual process and that it could have culminated six to eight hours before the pathology study. St. Charles argues that the testimony of *its* expert witnesses cannot be considered in determining whether there was sufficient evidence to support a finding that the deterioration was discernible a significant amount of time before Sulkosky examined plaintiff. It states:

> "The Court erred in basing its decision on evidence that the condition occurred over a period of time, manifesting changes that should have been observed by the nursing staff. Such evidence did not come from Dr. Sulkosky * * *.

> "* * * Sulkosky's testimony diametrically contradicts that of the other three doctors who testified in the case. Although those doctors did testify that the condition had developed over a lengthy period of time, they each testified that the nursing staff was not at fault. They each testified that Dr. Sulkosky had been at fault for failing to act timely when he had received clear indications that Plaintiff was in distress on the 18th.

> "Dr. Sulkosky's theory was that a sudden change occurred of which the nurses should have notified him. The other doctors, who believed the change was gradual, each exonerated the nursing staff. These two explanations of how Plaintiff's injury occurred are mutually exclusive. They cannot be rationally combined. The Court erred when it borrowed evidence of the duration of the condition from the doctors who exonerated the nurses and coupled that evidence with Dr. Sulkosky's testimony that the nurses failed to follow his instructions and failed to notify him of a sudden change.

> "When the testimony of the three other doctors is considered alone, it is clear that Dr. Sulkosky, and not the nursing staff was the negligent party whose negligence caused injury to Plaintiff. Causation is not a problem, because the loss of the muscles was traced directly to Sulkosky's failure to timely heed clear danger signals of which he knew."

■ ■  The argument misses the point. It is true that St. Charles' experts testified that Sulkosky was negligent, that the nurses were not and that Sulkosky's failure to respond adequately to the February 18 symptoms caused plaintiff's injury. However, their testimony was *also* relevant to whether

the nurses would have found observable symptoms if they had adequately examined plaintiff between 4 and 8:30 on the morning of February 20 and, therefore, it was inferentially probative of whether the nurses' failure to conduct the examinations *as well as Sulkosky's negligence* contributed to plaintiff's injuries. We do not agree that the jury could not consider St. Charles' witnesses' testimony as well as Sulkosky's in connection with those issues, and we do not agree that plaintiff failed to prove that the negligence of the nurses was causal.

■ St. Charles also assigns error to the admission of plaintiff's testimony that Sulkosky told her that "the hospital staff should have monitored you more closely." The statement was offered as a prior inconsistent one. St. Charles argues that the statement was not inconsistent with Sulkosky's testimony and that there was no foundation for its admission. Plaintiff argues, in essence, that Sulkosky's testimony about the nurses was internally contradictory and that the statement was therefore at least partially inconsistent. We conclude that, even if the admission of the statement was error, there was no possible prejudice to St. Charles. Sulkosky's testimony concerning the nurses' performance and about the conversation with plaintiff in which he made the statement in question was a crazy quilt of casting of criticism and partial retractions. However, the main thrust of most of his testimony was to the exact effect of the statement that he made to plaintiff but using other words. The contradictions in his testimony would have made the jury fully aware of the ambivalence in his view of the nurses' conduct. The statement added nothing to the picture the jury already had.

Affirmed.