Argued and submitted June 13, reversed and remanded in part; otherwise affirmed
October 5, Alsever's reconsideration denied November 25, 1988, and Jones'
reconsideration January 13, both petitions for review denied March 7, 1989
(307 Or 514)

# JONES,
*Appellant,*

*v.*

# SALEM HOSPITAL et al,
*Respondents.*

## (85-2563; CA A44521)

762 P2d 303

Kathryn H. Clarke, Portland, argued the cause for appellant. With her on the briefs was Robert D. Dames, Jr., Portland.

Keith J. Bauer, Salem, argued the cause for respondent Salem Hospital. With him on the brief were Billy M. Sime and Parks & Bauer, Salem.

Mildred J. Carmack, Portland, argued the cause for respondents John Alsever, M.D., and J. Thomas, M.D. With her on the brief were David K. Miller and Schwabe, Williamson & Wyatt, Portland.

Emil R. Berg, Portland, argued the cause for respondent Robert Sproed, M.D. With him on the brief was Hallmark, Keating & Abbott, P.C., Portland.

Kim Jefferies, Portland, argued the cause for respondents W. L. Holly, M.D., James K. Lace, M.D., and James K. Lace, M.D., P.C. On the brief were Barbara H. Thompson and Wood Tatum Mosser Brooke & Landis, Portland.

Before Richardson, Presiding Judge, Newman, Judge, and Riggs, Judge pro tempore.

RICHARDSON, P. J.

### RICHARDSON, P. J.

Plaintiff in this medical malpractice action appeals from a judgment for the defendant hospital and physicians which was entered after the trial court granted defendants' motions to dismiss on the ground that the action was brought after the five-year qualified statute of ultimate repose had run. ORS 12.110(4) provides:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. *However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."* (Emphasis supplied.)

The principal issue is whether the "misleading representations" which plaintiff alleges that defendants made tolled the statute as to his claims against some or all of them.

Plaintiff was born at the hospital on May 4, 1979. His mother[1] first consulted defendant Sproed, a family practitioner, in November, 1978. He referred her to defendant Alsever, an obstetrician, in February, 1979. Sproed and Alsever both participated in her care until her admission to the hospital on May 3. Alsever and another obstetrician, defendant Thomas, attended plaintiff's mother through the time of his delivery by cesarean section. Thereafter, at the request of the two obstetricians and the hospital, defendants Holly and Lace, who are pediatricians on the hospital's medical staff, assisted in plaintiff's neonatal care through the time of his discharge from the hospital on May 18. Holly continued to provide pediatric care to plaintiff until May, 1981, and Alsever continued as a physician for plaintiff's mother until 1984. The other defendants had no further involvement in

---

[1] She is his guardian *ad litem* in this action.

either patient's care after they were discharged from the hospital. The alleged result of defendants' alleged negligence was that plaintiff suffered developmental delay, brain damage, cerebral palsy, paraplegia and learning disabilities. He brought this action in October, 1985.

Plaintiff's allegations of negligence were:

"Defendant hospital was negligent on May 3 and May 4, 1979, in one or more of the following particulars:

"(a)   In failing to have sonography equipment located in the maternity ward, thereby necessitating the transfer by ambulance of pregnant and laboring patients for ultrasound analysis, or, in the alternative, the performance of diagnostic procedures without the benefit of sonography equipment, as a result of which an amniocentesis by defendant Alsever caused a puncture of plaintiff's umbilical cord;

"(b)   In having rules, regulations, and procedures which permitted defendant Alsever to perform an amniocentesis without benefit of ultrasound analysis;

"(c)   In failing to provide a continuous fetal heart monitor machine to monitor the labor of plaintiff's mother and thereby assess fetal distress;

"(d)   In failing to have available, at the time of Ronald's birth and during the first 24 hours of life, the person most qualified to resuscitate a jeopardized infant.

"* * * * *

"Defendants Alsever and Sproed, acting in concert, were negligent from February 26, 1979 through May 2, 1979, in one or more of the following particulars:

"(a)   In failing to perform an ultrasound between February 26, 1979 and May 2, 1979, and thereby to diagnose placenta previa;

"(b)   In failing to mandate strict bed rest for plaintiff's mother.

"* * * * *

"Defendants Alsever and Thomas, acting in concert, were negligent on May 3 and May 4, 1979, in one or more of the following particulars:

"(a)   In performing amniocentesis without the benefit of ultrasound equipment, thereby puncturing the umbilical cord;

"(b)   In failing to monitor plaintiff's condition prior to birth with a continuous fetal heart monitor;

"(c)   In delaying cesarean section in the presence of signs and symptoms of fetal distress and of significant bleeding caused by placenta previa;

"(d)   In failing to have available, at the time of Ronald's birth and during the first 24 hours of life, the person most qualified to resuscitate a jeopardized infant; and

"(e)   In failing to mandate strict bed rest for plaintiff's mother prior to delivery.

"* * * * *

"In addition to the allegations in the paragraph above, defendants Alsever and Thomas, prior to the amniocentesis procedure, failed to inform plaintiff's mother of the material risk of puncture of the umbilical cord, and as a result, plaintiff's mother was unable to make an informed choice regarding her care and the care of Ronald.

"* * * * *

"Defendants Holly and Lace were negligent between May 4 and May 18, 1979 in one or more of the following particulars:

"(a)   In failing to provide adequate oxygen to plaintiff for a period of approximately two and a half hours after birth;

"(b)   In not obtaining blood samples from plaintiff promptly after birth for assessment of arterial blood gases; and

"(c)   In failing to transfer plaintiff to a Level III neonatal care center promptly after birth."

Plaintiff pleaded that defendants made the following misrepresentations:

"Following plaintiff's birth, defendants Lace and Holly falsely represented in the hospital records and to plaintiff's parents that plaintiff had suffered no fetal distress, and that his sole problem was respiratory distress syndrome as a result of prematurity: these defendants omitted to disclose in the same hospital records and to plaintiff's parents that the amniocentesis procedure conducted prior to delivery had caused a puncture of the umbilical cord, that plaintiff had suffered heavy bleeding prior to delivery as a result and that there had been meconium staining indicative of fetal distress. Defendants Lace and Holly also misrepresented to plaintiff's parents that there had been no negligence in plaintiff's delivery, no birth injury to plaintiff, and that plaintiff's developmental delay was the result of prematurity alone and would eventually resolve. Defendants Lace and Holly also omitted to

disclose to plaintiff's parents that diagnostic tests after birth had demonstrated plaintiff to be experiencing respiratory acidosis, and that there had been a delay of two and a half hours in providing adequate oxygen to plaintiff, which contributed to his subsequent developmental problems. The representations in the hospital records and to plaintiff's parents were made subsequent to the negligent conduct of which complaint is made * * *, and were not contemporaneous with it.

"* * * * *

"Defendants Alsever and Thomas failed to disclose to plaintiff's mother that the amniocentesis had caused a puncture of the umbilical cord and resulting bleeding to plaintiff, that the amniotic fluid had demonstrated the presence of blood, and that there had been meconium staining which had indicated fetal distress. Defendant Alsever failed to make these disclosures even when questioned by plaintiff's mother on June 30, 1981, regarding the possibility that a premature birth and subsequent developmental delay could occur again in another pregnancy, and requested information and reassurance from Dr. Alsever regarding the cause of plaintiff's injuries. Defendant Alsever also, on his own behalf and that of Dr. Sproed and Thomas, affirmatively misrepresented to plaintiff's mother that she had received good care during the course of her pregnancy and delivery, and that there had been no act or omission on the part of her physicians which could have contributed to plaintiff's problems."

Plaintiff did not allege that the hospital made any representations to his parents concerning his or his mother's diagnosis or treatment. He contends, however, that, because the hospital participated in the selection of Lace and Holly, "representing them to be members of [its] pediatric staff," they were its apparent agents, and it was therefore responsible for any misleading representations that they made.

In addition to his arguments concerning the tolling of the statute, plaintiff makes two others. He contends, first, that the hospital did not include the limitations issue in its original ORCP 21 motion, but raised it through a "supplemental Rule 21 motion." Therefore, plaintiff argues, ORCP 21F precluded the issue's consideration, and the court erred by ruling on it. We do not agree that the error, if it was such, warrants reversal. The hospital, which did not file an answer, could have raised the issue affirmatively had the need for an answer arisen. ORCP 21G(2). Plaintiff had a complete and

fair opportunity to be heard on the issue and was in no way prejudiced by the procedure. *See State Farm Ins. Co. v. Berg,* 70 Or App 410, 689 P2d 959 (1984), *rev den* 298 Or 553 (1985).

■    Plaintiff next argues that the five-year repose period of ORS 12.110(4), as applied to him and other minor victims of medical negligence, violates Article I, sections 10 and 20, of the Oregon Constitution and the Equal Protection Clause of the federal constitution, because it provides a shorter limitation period than ORS 12.160 makes possible for minors who are victims of torts of other kinds. As plaintiff acknowledges, the Oregon appellate courts have repeatedly upheld statutes of ultimate repose against challenges based on Article I, section 10, *see Johnson v. Star Machinery Co.,* 270 Or 694, 530 P2d 53 (1974); *Joseph v. Burns & Bear,* 260 Or 493, 491 P2d 203 (1971); *Davis v. Whiting Corporation,* 66 Or App 541, 674 P2d 1194, *rev den* 297 Or 82 (1984), and have rejected equal protection arguments based on purportedly improper classifications made by statutes of limitations. *See Shaw v. Zabel,* 267 Or 557, 517 P2d 1187 (1974); *Davis v. Whiting Corporation, supra.* However, as plaintiff maintains, the particular variation on the theme which his argument presents is not directly answered by those cases.

Plaintiff's point that ORS 12.110(4) gives minor plaintiffs a shorter ultimate period within which to bring suit for malpractice than for other torts is, of course, equally true of adult plaintiffs. *See* ORS 12.115. ORS 12.110(4) treats all medical malpractice plaintiffs identically, be they adults or minors. The fact that ORS 12.160 gives minors and others under disability longer periods than the general population enjoys within which to bring claims of other kinds does not, in itself, preclude the legislature from establishing a uniform limitation period for all malpractice plaintiffs. *See Shaw v. Zabel, supra.* If the legislature has created classifications among minors by making the ORS 12.160 classification between them and non-incapacitated adults inapplicable to medical malpractice cases, there is adequate rational support for its having done so. Oregon Laws 1975, chapter 796, which made ORS 12.160 inapplicable to the repose provisions of ORS 12.110(4), *see* section 10a, was enacted in response to the so-called "medical malpractice crisis." We are not prepared to say that the classification lacks a rational basis or a rational relationship to the purpose of the statute which creates it.

Plaintiff challenges the legislature's assumptions and the evidentiary basis for the distinction created by the 1975 amendment; but, as we said in *Davis v. Whiting Corporation, supra:*

"Contrary to the thrust of plaintiff's approach, we do not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations." 66 Or App at 544.

We reject plaintiff's constitutional argument, and we turn to the tolling issue.

■ In *Duncan v. Augter,* 286 Or 723, 596 P2d 555 (1979), the defendant physician operated on the plaintiff in 1968 to remove her gall bladder; he also removed her appendix. The plaintiff suffered ongoing abdominal pain and, in 1975, other physicians performed surgery on her and discovered that the tip of the appendix had not been removed and had become contaminated by bacteria. The plaintiff brought the action in 1976. The defendant demurred on the ground that the action was time-barred by ORS 12.110(4). The plaintiff amended her complaint to allege that, shortly after the 1968 surgery, the defendant "advised her [he] had removed her appendix" and that that "was a false and misleading representation" which she did and could not discover until the 1975 operation was performed. 286 Or at 732.

The court reversed the overruling of the demurrer and defined the circumstances under which a "misleading representation" tolls the running of the ORS 12.110(4) repose period:

"It seems a fair reading that the amendment was intended to give the misinformed patient additional time to sue, but only to the extent that the defendant was responsible for the misinformation. ORS 12.110(4) must have been meant to accommodate in practice the competing policies entering into its enactment.

"Accordingly, we do not believe that a plaintiff bringing a belated malpractice action has to plead or prove that the defendant deliberately misled him by an explicit or implicit representation. Such a deliberate deception would be 'fraud' or 'deceit' under the amendment without the addition of 'misleading representation.' The essence of this phrase is that the representation misleads the plaintiff, not that it is fraudulent or deceitful on the part of the defendant. Moreover, it must be recalled that the role of the amendment is not to give an injured party a new claim for the misrepresentation but only

to relieve him of default for an excusable delay in bringing his action on the original injury. It is immaterial to that purpose whether he was misinformed deliberately or by mistake.[2]

"* * * [W]e think that if a defendant has deliberately misstated a diagnosis or a proposed treatment before performing or omitting the act on which plaintiff's claim is predicated, and the plaintiff as a result fails to pursue the claim until he discovers the misrepresentation, there is no obvious reason why the final clause of ORS 12.110(4) does not apply as much as when the misrepresentation is made after the act or omission. And once the clause refers to statements made prior to the act or omission as well as afterwards, there is no apparent reason why this does not include a 'misleading representation' as well as fraud or deceit.

"However, we think that deliberate deceptive statements differ from merely careless or innocent misleading representations in one important respect. Such an innocent contemporaneous representation must misrepresent something other than the careful performance or the success of the very treatment or operation whose failure is the basis of plaintiff's subsequent complaint. Otherwise the final clause of. ORS 12.110 could entirely displace the preceding clauses whenever a plaintiff pleaded that he relied on defendant's representations of a successful treatment and did not discover his cause of action until he discovered that these representations, though perhaps sincere, were false. We see nothing to suggest that this kind of bootstrap justification for a delayed claim falls within the legislative objective of that clause.

"* * * [I]t appeared on the face of the complaint that the only 'misleading representation' pleaded to overcome the time limits fixed in the first two provisions of ORS 12.110 was defendant's contemporaneous statement that he performed the act whose negligent performance is the gravamen of the complaint. As stated above, this cannot suffice as a 'misleading statement' under the statute, since the consequence of finding that one has been misled whenever one discovers the allegedly unprofessional treatment contradicts the object of ORS 12.110(4). There is no claim that defendant knew that he had not removed the entire appendix or that, informed about plaintiff's later abdominal difficulties, he reassured her or her

---

2 Plaintiff does not allege that any of defendants' misrepresentations were deliberate, and his arguments to us on the tolling issue are based on the analysis in *Duncan and Skuffeeda v. St. Vincent Hospital, infra,* relating to unintentional misleading representations.

physicians that these difficulties could not relate to the presence of infected appendix tissue. Without such a pleading, defendant's demurrer should have been sustained." 286 Or at 730-33.

We subsequently applied the "misleading representation" provision in *Skuffeeda v. St. Vincent Hospital,* 77 Or App 477, 714 P2d 235, *rev den* 301 Or 240 (1986). The plaintiff in that case had undergone open heart surgery, in the course of which a metal screw from a surgical instrument fell into and was left in his chest cavity. Post-surgical x-rays did reveal or should have revealed the presence of the screw to the defendant surgeons and radiologists, but they did not inform the plaintiff of its presence. The plaintiff brought a malpractice action against them more than five years after the operation was performed. However, he alleged that the defendants' misrepresentaions, *inter alia,* in failing to disclose the x-ray findings, tolled the statute. We held that the alleged misrepresentations did not have that effect with respect to the plaintiff's specifications concerning the performance of the radiological procedures or the non-disclosure of their results, because the misrepresentations went to the gravamen of *those* specifications. We concluded, however, that the misrepresentations pertaining to the x-rays did toll the statute as to the plaintiff's specifications regarding the negligent performance of the surgery. We also noted in *Skuffeeda* that a "party need not make an affirmative statement to misrepresent." 77 Or App at 483, n 3.

*Duncan* and *Skuffeeda* articulate many of the principles which govern here. However, not all of those principles can be easily adapted to this case, because there are significant factual differences between it and the two earlier ones. *Duncan* involved a single doctor,[3] a single negligent act and a single representation. *Skuffeeda* was more complicated, but each of the defendants there, in some way, was involved in the performance of the x-ray studies or the nondisclosure of what they showed. Here, there were five physicians, who treated plaintiff and his mother at different times and in different ways. The negligence which plaintiff ascribes to the various doctors and to the hospital differs to some extent in each

---

[3] A codefendant won an involuntary nonsuit in the trial court and was not involved in the appeal. 286 Or at 726, n 1.

instance and, in some, is totally unrelated to the negligence which he alleges against other defendants. Similarly, some of the representations which he alleges that each defendant made pertained to the actions of other defendants, in addition to his own, and some of the alleged representations related to professional services by others in which the speaker had *no* involvement.

Neither *Duncan* nor *Skuffeeda* answers whether ORS 12.110(4) can be tolled as to a physician's own negligent acts or omissions by misleading representations which he makes regarding the unrelated negligence of another doctor. Logically, the answer must be no, because misrepresentations which have no bearing on any negligence in which the speaker was involved cannot mislead a plaintiff into delaying an action based on that negligence. At the same time, both *Duncan* and *Skuffeeda* make it clear that an innocent or careless misrepresentation can toll the statute only as to a defendant who is "responsible for the misinformation." *See Duncan v. Augter, supra,* 286 Or at 731; *Skuffeeda v. St. Vincent Hospital, supra,* 77 Or App at 483.

■ A related difficulty in applying *Duncan* to a case such as this inheres in its rule that an unintentional contemporaneous misrepresentation has no tolling effect, if it simply asserts the proper performance of the medical procedure which is the gravamen of a negligence claim. Insofar as the alleged representations by the physicians here consisted of statements about facets of plaintiff's and his mother's care in which they did not participate, the statements would of course not relate to the gravamen of the claims against the speakers. However, the statements could not have misled plaintiff into delaying the assertion of those claims, because the statements and the claims were unrelated. Plaintiff describes the conundrum in his reply brief:

> "Defendants also contend that [certain] misrepresentations and failures to disclose are totally irrelevant because they do not relate to the negligence. * * * [Defendants] would place plaintiff in a Catch-22 situation. On the one hand, misrepresentations are not sufficient if they do not relate to the negligence; and on the other hand, misrepresentations that do relate to the negligence go to the gravamen of the complaint and are also insufficient. [Defendants] could best be summarized as stating that no innocent representation suffices to toll the statute of limitations. The law, however, is otherwise."

■    Plaintiff's statement assumes, as we must, the correctness of the *Duncan* principle regarding contemporaneous representations relating to the gravamen of the claimed negligence; he therefore argues that the fallacy in the proposition is on the other side of the pincer, *i.e.,* that a representation which has nothing to do with a claim cannot toll the statute as to that claim. However, the fact that *Duncan* holds that contemporaneous representations which relate in particular ways to the gravamen of a claim cannot be "misleading representations" under ORS 12.110(4) does not imply the converse, *i.e.,* that representations which are not pertinent to the claim can have a tolling effect. In order to be misleading, a representation *must* have *some* relationship to the plaintiff's knowledge or awareness of the facts constituting the claim. As plaintiff states, the result is a Catch-22 situation of sorts; but it is not unusual for such a situation to arise in applying a statute of ultimate repose. Indeed, most ultimate repose statutes present plaintiffs with a dead end rather than the defined obstacles which this one does.[4]

■    We conclude that plaintiff has pleaded enough to survive a motion to dismiss with respect to Holly, Lace[5] and Alsever, but not as to the other defendants. The threshold problem with plaintiff's allegations against Sproed is that he does not assert that Sproed himself represented anything. The allegation is instead that Alsever, "on his own behalf and that of Dr. Sproed and Thomas," represented to plaintiff's mother that "she had received good care during the course of her pregnancy and delivery, and that there had been no act or omission on the part of her physicians which could have contributed to plaintiff's problems." Plaintiff argues that his allegation that Alsever and Sproed "acted in concert" is sufficient to support the inference that Alsever's representation is imputable to Sproed. *See Sprinkle v. Lemley,* 243 Or 521, 414 P2d 797 (1966). Assuming, without deciding, that plaintiff's

---

[4] The Catch-22 is, of course, only partial. As *Skuffeeda v. St. Vincent Hospital, supra,* illustrates, misrepresentations about matters other than the negligent act on which a claim is based can sometimes deter a plaintiff from discovering and pursuing the gravamen of his action and can therefore toll the statute. Moreover, *Duncan* holds only that *contemporaneous* representations bearing on the gravamen of a claim do not toll the statute as to the claim.

[5] Our disposition regarding Lace applies as well to the defendant professional corporation of which he is a shareholder.

underlying legal thesis would otherwise be correct and that his pleading would otherwise provide a sufficient basis to advance that thesis, the complaint shows on its face that Sproed's and Alsever's alleged concert of action ended in May, 1979, two years before Alsever made the representation.

■ For the same reason, plaintiff's attempt to impute Alsever's representation to Thomas fails. Thomas' connection with the events also ended in May, 1979, and the representation was allegedly made in June, 1981. Plaintiff also alleges that Thomas as well as Alsever failed to disclose that the amniocentesis had caused the umbilical cord puncture and its sequelae. However, that nondisclosure related directly to the gravamen of the claim against Thomas, and plaintiff alleges no facts to suggest that the failure to disclose was not "contemporaneous." The trial court correctly granted Sproed's and Thomas' motions to dismiss.

■■ Most of the misrepresentations and nondisclosures which plaintiff alleges against Holly and Lace relate to the prenatal and delivery care in which they were not involved and therefore cannot be misleading as to the claims against them. However, three of their other alleged statements or nondisclosures could, if proved, constitute "misleading representations" under ORS 12.110(4). The first is Holly's and Lace's alleged failure to disclose "that diagnostic tests after birth had demonstrated plaintiff to be experiencing respiratory acidosis." They argue that any such nondisclosure "goes to the gravamen of the complaint since plaintiff alleges the doctors were negligent in failing to provide adequate oxygen to plaintiff and in failing to obtain blood samples for assessment of arterial blood gases." We disagree. As in *Skuffeeda v. St. Vincent Hospital, supra,* the nondisclosure about the diagnostic tests and their results do not bear on the gravamen of the asserted initial negligence, *i.e.,* failing to provide oxygen and to obtain samples "promptly after birth" to assess plaintiff's arterial blood gases.

■ The other alleged misrepresentations by Holly and Lace, that they did not disclose the delay in administering adequate oxygen and that they stated that the "developmental delay was the result of prematurity alone and would eventually resolve," do go to the gravamen of plaintiff's claims

against the two physicians.[6] However, plaintiff alleges that the representations were *not* "contemporaneous" with the negligence that he alleges against Holly and Lace and therefore can constitute "misleading representations" consistently with *Duncan v. Augter, supra.* Holly and Lace maintain that the court in *Duncan* did not intend to "create a distinction between a statement made at the time of and statements made after or subsequent to the complained of conduct." Plaintiff relies on the last two sentences in *Duncan,* quoted above, as support for such a distinction. More to the point, we must assume that the word "contemporaneous," which the court used at least twice in defining the representations which would not toll the statute, was deliberately chosen. It could only have been intended to distinguish between representations made in close proximity to the negligence and more remote ones.

The more difficult question is *how* proximate to the event a representation must be to be contemporaneous. In *Duncan,* the doctor made his statement immediately after the operation. In *Skuffeeda,* we implicitly concluded that the defendants' statements or nondisclosures through the time of the plaintiff's discharge from the hospital were contemporaneous with the alleged negligence in connection with the x-ray procedures. However, we do not think that the court in *Duncan* intended contemporaneousness to be measured by a universal bright line based on a particular chronological period or a particular event—such as discharge or the termination of treatment—which follows the negligent act. The contexts in which the court used "contemporaneous" imply that the negligence and the physician's representations must be related—temporally and otherwise—in such a way that the representation simply espouses a satisfactory performance

---

[6] A trier of fact could conclude that the second of those statements was not a representation at all, as distinct from a diagnosis which might serve as the predicate for a specification of negligence. Under the allegations, however, plaintiff could show that the statement was a misleading representation.

We emphasize that our holding here is that some of plaintiff's allegations of misleading representations are adequate to enable some of his claims of negligence to withstand a motion to dismiss on Statute of Limitations grounds. However, many of his viable allegations relating to the limitations issues and, ultimately, the issues themselves, present questions of fact to be decided on remand independently of the merits of the surviving negligence claims. *See, e.g., Shaughnessy v. Spray,* 55 Or App 42, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982).

before the physician can or should have any reason to doubt its success. Moreover, the court said in *Duncan* that the complaint there would not have been demurrable if the plaintiff had alleged that, "informed about plaintiff's later abdominal difficulties, [the defendant] reassured her or her physicians that these difficulties could not relate to the presence of infected appendix tissue." 286 Or at 733.

We conclude that contemporaneousness ends when the maker of the representation knows or has reason to know information which he did not have at the time of the negligently performed procedure or its immediate aftermath and which reasonably indicates that something in the performance of or related to the procedure went wrong. Plaintiff's allegation that Holly's and Lace's representations were made after the negligent conduct and were not contemporaneous is sufficient to enable his pleading to withstand their motions to dismiss. Whether there were any misleading representations of the kind alleged, and whether they were contemporaneous, are factual questions—among others—to be decided on remand in the light of what we have said.[7]

Plaintiff alleges that Alsever made three misleading representations or nondisclosures. We have already considered the first in our discussion of the allegations against Thomas and have concluded that it cannot constitute a tolling misrepresentation. The second is that, more than two years after Alsever's negligent conduct, he persisted in the same nondisclosure when plaintiff's mother asked whether prematurity and developmental delay could recur in a future pregnancy. Alsever's nonresponsiveness to that tangential question could not have misled plaintiff about his negligence. However, his alleged statement in June, 1981, that plaintiff's mother had received good care and that the physicians' conduct could not have contributed to plaintiff's problems was, as pleaded, an after-the-fact representation which could have been misleading and which can toll the statute as to the claim against Alsever. The trial court erred in allowing Alsever's, Holly's and Lace's motions.

---

[7] The time of the alleged misrepresentations, which plaintiff does not plead, *could* call for different ultimate dispositions as to the two pediatricians. Holly's participation in plaintiff's treatment continued long after Lace's ceased. Although the motion to dismiss should not have been granted as to either of them, a motion to make more definite and certain might have been (and still may be) appropriate.

■ As noted earlier, plaintiff's only basis for asserting that the hospital is chargeable with misleading representations is that it participated in obtaining Holly's and Lace's pediatric services for plaintiff and that it represented that those doctors were members of its pediatric staff. Therefore, according to plaintiff, Holly and Lace were the hospital's apparent agents, and it is vicariously responsible for any misrepresentations that they made. Assuming that apparent agency can be the basis for imputing the agent's misleading representations to the principal for purposes of ORS 12.110(4), plaintiff is not aided, because, as a matter of law, his allegations cannot support a showing that Holly and Lace were the hospital's agents—apparent or otherwise. Plaintiff relies on *Themins v. Emanuel Lutheran,* 54 Or App 901, 637 P2d 155 (1981), *rev den* 292 Or 568 (1982), and similar cases from other jurisdictions. However, as we explained in *Shepard v. Sisters of Providence,* 89 Or App 579, 750 P2d 500 (1988):

> "*Themins* is one of a line of cases from various jurisdictions which hold that practitioners performing functions for which hospitals themselves are responsible, or 'hold themselves out' to be, *e.g.,* emergency, radiology and pathology services, are the hospitals' ostensible, if not their actual, agents. * * *
>
> "[Those cases] stand for the proposition that physicians who are nominally 'independent contractors' may be treated as actual or ostensible hospital agents, for purposes of vicarious liability, when they perform professional services which are integral to hospital operations and which hospitals hold themselves out to the public to provide." 89 Or App at 586-87.

■ ■ The representation which plaintiff ascribes to the hospital does not describe that kind of relationship between it and the pediatricians, and plaintiff's parents could not have justifiably relied on it as a representation of agency. Pediatric services, unlike radiology, pathology and emergency care, are not "services which are integral to hospital operations and which hospitals hold themselves out to the public to provide." They are, instead, among the general run of professional specialties which private practitioners, with privileges on a hospital's medical staff, perform on hospital facilities. *See* n 8, *infra.* It is established law in Oregon that hospitals are not vicariously liable for the professional negligence which such practitioners commit in their facilities. *Holland v. Eugene*

*Hospital et al.,* 127 Or 256, 270 P 784 (1928); *see also May v. Broun,* 261 Or 28, 492 P2d 776 (1972); *Jarvis v. St. Charles Medical Center,* 77 Or App 353, 713 P2d 620 (1986); *but see Shepard v. Sisters of Providence, supra,* 89 Or App at 587, n 3. Plaintiff's pleading is not susceptible to any inference, under any recognized legal theory, that the hospital was responsible for the negligence or the representations of Holly or Lace.[8] The claim against the hospital is therefore barred by the repose provision of ORS 12.110(4).

Reversed and remanded for proceedings not inconsistent with this opinion as to defendants Alsever, Holly, Lace and James K. Lace, M.D., P.C.; otherwise affirmed.

---

[8] Plaintiff does not allege that the hospital made any representation that either pediatrician was actually employed by it, as a resident, intern or otherwise.