Argued and submitted June 8, reversed and remanded August 26, reconsideration denied November 6, petition for review allowed December 30, 1987 (304 Or 680)

**BANDA,**
*Appellant,*

*v.*

**DANNER et al,**
*Defendants,*

*and*

**UMATILLA HOSPITAL DISTRICT NO. 1,**
*Respondent.*

(A8401-00096; CA A40303)

741 P2d 514

Richard P. Noble, Portland, argued the cause for appellant. With him on the briefs was Kathryn H. Clarke, Portland.

Lee S. Aronson, Portland, argued the cause for respondent.

With him on the brief were James C. Carter and Holmes, DeFrancq & Schulte, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiff[1] appeals from a summary judgment for defendant Umatilla Hospital District No. 1 (defendant) in this action for medical malpractice brought under the Oregon Tort Claims Act (OTCA). She asserts that defendant was negligent concerning the birth of her son Jose.[2] Defendant is a public body under the OTCA. The trial court held that plaintiff had neither filed a notice of claim nor commenced this action within the statutory periods provided in ORS 30.275. We reverse and remand.

In the early morning of August 24, 1981, Sylvia, who was seven months pregnant, went into labor. She went to the Umatilla Hospital, which defendant operated, and asked the nurse on duty to call Danner, her physician. The nurse did not do so for two hours. When Danner arrived, he found labor too far advanced to stop. Jose was born soon afterwards. At Danner's request, Jose was transferred to Oregon Health Sciences University (OHSU) in Portland, where he stayed until December. Partly because of a lack of oxygen immediately after his birth, Jose suffered serious and permanent brain damage.

In March, 1982, Sylvia consulted Ditton, an attorney in Hermiston, where she lived, about the possibility that defendant had been negligent. She emphasized the delay in calling Danner but also told Ditton that Dr. Benda, who had treated Jose at OHSU, had said that he had not received enough oxygen after his birth. Ditton wrote Benda for additional information. In her response, Benda was hesitant to comment on defendant's potential negligence, suggesting instead that Ditton consult a particular obstetrician who specialized in high-risk obstetrics. She did say that she saw no negligence by Danner. Because of Danner's good reputation in the community, and because of Benda's statement, Ditton then talked with Danner, instead of consulting a specialist. Danner said that he could not have stopped labor even if he

---

[1]The plaintiff in this case is Sylvia Banda as the guardian *ad litem* of her son, Jose. We will refer to her, when she acted in that capacity, as plaintiff. When we discuss her actions in a different capacity we will refer to her as "Sylvia."

[2] Plaintiff has settled Jose's claims against defendants Dr. Danner, who delivered him, and Loper, the assisting nurse. Jose's claim against Oregon Health Sciences University is still pending. The judgment complies with ORCP 67B.

had been called immediately after plaintiff arrived at the hospital. Ditton also prepared several questions, which he asked Danner or, possibly, Benda.[3] One question was whether the damage would have occurred if the hospital had had a respirator. It appears from Ditton's notes that the answer was "no."

After his investigation, Ditton told Sylvia that he did not think that Jose had a claim against anyone. Sylvia then dropped the matter. She later engaged the present attorneys, was appointed Jose's guardian *ad litem,* and filed this action against Danner and OHSU in January, 1984. Her attorneys thereafter received an opinion from a medical expert that defendant's negligence had contributed to Jose's injury. They investigated defendant's potential liability further and presented a tort claim notice to defendant on March 19, 1984. On April 18, they amended the complaint to add defendant as a party. Defendant thereafter moved for summary judgment on the ground that both the notice and the commencement of the action were not timely. The court granted the motion and entered the judgment from which plaintiff appeals.

■ Under ORS 30.275(2), Jose had 270 days after his alleged injury to give defendant notice of it: 180 days for the injury claim plus 90 additional days because of his minority. He had two years after the alleged injury to bring the action.[4] However, the periods within which notice must be given and within which the action must be commenced do not begin to run until a plaintiff has a reasonable opportunity to discover the fact of the injury *and* that the defendant was negligent in some respect which caused the plaintiff damage. *Adams v. Oregon State Police, supra,* n 4; *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980). That is when the claim "accrues." *Berry v. Branner,* 245 Or 307, 316, 421 P2d 996

---

[3] Ditton could not remember whether he had spoken with Benda.

[4] Plaintiff argues that the version of ORS 30.275 in effect when Jose was born applies. It would allow an additional five years to bring the action because of Jose's minority. The 1981 amendments to the statute, which became effective January 1, 1982, abolished the five-year tolling of the Statute of Limitations under the Tort Claims Act. We have held that the amendments do not apply to a claim which accrued before their effective date. *Bergstad v. Thoren,* 86 Or App 70, 738 P2d 223 (1987). Because the notice and limitations periods begin to run at the same time, *Adams v. Oregon State Police,* 289 Or 233, 611 P2d 1153 (1980), we need not decide whether the amendments apply to this case. If the claim accrued in March or April, 1982, as defendant argues, the tort notice was untimely. If it did not, defendant's action is not barred. When the claim accrued is a question of fact.

(1966). It is not necessary, under the discovery rule, that the plaintiff know the precise nature of the negligence or "have knowledge of facts that, if proved, would convince every reasonable factfinder that [the] plaintiff should win. It is sufficient that a plaintiff have knowledge, actual or implied, of facts that, if proved, will at least raise an issue of fact on each element of the claim." *Duncan v. Augter,* 62 Or App 250, 255, 661 P2d 83, *rev den* 295 Or 122 (1983). That is, the plaintiff must know facts which, if proved, would be sufficient to survive a motion for a directed verdict.

■ The first question in this case is who is the "plaintiff" whose knowledge begins the running of the statutory period. Jose is the injured person; he clearly did not know the source of his injury or that defendant's negligence might be its cause at any time relevant to the motion for summary judgment. Defendant argues that we should impute Sylvia's knowledge to Jose and that Sylvia knew facts in the spring of 1982 which would survive a motion for directed verdict. Plaintiff insists that the claim is Jose's and that his mother's knowledge is not relevant. We have assumed in previous cases that a parent's knowledge is also the child's, but we have never so held; the plaintiffs did not raise the issue. *See, e.g., Bergstad v. Thoren, supra* n 4; *Guiley v. Hammaker,* 55 Or App 921, 640 P2d 664, *rev den* 292 Or 863 (1982). Cases elsewhere appear to be divided. *Compare Ohler v. Tacoma General Hospital,* 92 Wash 2d 507, 598 P2d 1358 (1979) (plaintiff did not know cause of her injury until she was an adult; her parents' knowledge before then is not imputed to her if they do not communicate it to her) *with Nardone v. Reynolds,* 333 So 2d 25 (Fla 1976) (limitations period began when parents, who were child's legal guardians and next friends, knew the nature of the child's condition).

When Sylvia consulted Ditton, she went as a concerned parent, not as Jose's legal representative. Until she was appointed his guardian *ad litem,* she had no legal standing to seek to recover Jose's damages. If Jose's father, for instance, had been appointed guardian, Sylvia's knowledge would not be relevant to when the claim was discovered. There is no reason to treat Jose differently because his parents chose to have his mother rather than his father be the official guardian of his legal interests. A different conclusion would mean that a child's rights would be at the mercy of the parents' actions at a

time when they had no special responsibility to protect the child's legal interests. It would also make the child's rights depend on the fortuity of who was willing and able to act as guardian *ad litem,* with a premium placed on the potential guardian's previous ignorance of the facts. We see no reason to open the door to such possibilities for manipulation.

This is a claim to recover for alleged negligence which damaged Jose; any recovery will be solely for his benefit. We hold that Sylvia's knowledge is not attributable to him before she became his guardian *ad litem.* At that time she gained the legal ability to act in court on his behalf with regard to this claim, and her knowledge may properly be considered his. The time for notice under ORS 30.275 did not begin running until then, assuming that plaintiff at that time knew sufficent facts to initiate its running. Sylvia was appointed guardian *ad litem* on January 11, 1984. The tort claim notice was given within 180 days of that date, and defendant was added to the case within two years of it. The trial court erred in granting defendant's motion for summary judgment.

Reversed and remanded.