Argued and submitted May 7, affirmed September 12, 2001

Barbara BARKE,
Personal Representative of the Estate of
Randall Barke, Deceased,
*Appellant,*

*v.*

Edgar MAEYENS, Jr., M.D.,
*Respondent.*

00CV0012; A111121

31 P3d 1133

W. Eugene Hallman argued the cause for appellant. With him on the brief were Michael R. Stebbins, Stebbins & Coffey, Mark R. Bocci and Pippin & Bocci.

Marjorie A. Speirs argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff, Barbara Barke, the personal representative of the estate of her deceased husband, Randall Barke, appeals from a judgment dismissing her wrongful death action on the ground that it was barred by the ultimate repose provision of ORS 12.110(4). She argues that that provision violates Article I, section 10, and Article I, section 20, of the Oregon Constitution. For the reasons set forth below, we affirm the trial court's dismissal of plaintiff's claim.

■ In reviewing the granting of a motion to dismiss, we assume the truth of all allegations in the complaint, as well as any inferences that may be drawn, and view them in the light most favorable to the nonmoving party. *Jaqua v. Nike, Inc.*, 125 Or App 294, 296, 865 P2d 442 (1993). The complaint alleges: In December 1992, Randall Barke was treated by defendant, Edgar Maeyens, Jr., M.D., for a lesion on his scalp. Defendant shaved the lesion and sent it to a lab for a biopsy. Defendant diagnosed a benign mole. Barke sought no further treatment for the problem until March 10, 1998, when he consulted defendant about a lump on the same area of his scalp. Defendant performed an incision and drainage. In April 1998, defendant referred Barke out for a total excision. In May 1998, Barke was diagnosed with metastatic malignant melanoma. Re-evaluation of the 1992 biopsy showed malignant cells.

On January 10, 2000—within two years of his discovery of the alleged malpractice, but more than five years after his treatment with defendant—Barke brought this action, alleging medical malpractice. Barke alleged, particularly, that defendant was negligent in failing to detect the presence of malignant cells in the 1992 biopsy and in failing to provide appropriate treatment. His wife, Barbara Barke, also sought damages for loss of consortium. Upon Barke's death shortly thereafter, Barbara Barke was appointed personal representative of his estate, which was then substituted as plaintiff in this action.

Defendant moved, under ORCP 21 A(9),[1] to dismiss the complaint on the ground that the face of the complaint

---

[1] ORCP 21 A(9) provides that a defense may be made by a motion to dismiss if "the pleading shows that the action has not been commenced within the time limited by statute."

revealed that it had not been filed within the limitations period prescribed in ORS 12.110(4). The trial court granted defendant's motion, and this appeal ensued.

ORS 12.110(4) provides:

> "*An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation* shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160 [concerning tolling of the limitations period for persons under disabilities], every such action *shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based* or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered." (Emphasis added.)

Plaintiff acknowledges that this action was not "commenced within five years from the date" of defendant's alleged negligent acts committed in 1992. Plaintiff argues that the five-year "ultimate repose"[2] provision of ORS 12.110(4), which limits the "discovery rule" embodied in the previous sentence of ORS 12.110(4), violates both Article I, section 10, and Article I, section 20, of the Oregon Constitution.

■ We turn first to plaintiff's argument under Article I, section 20. Article I, section 20, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." The Oregon Supreme Court has recently announced:

---

[2] We refer to the five-year provision in ORS 12.110(4) as a statute of ultimate repose because it places an absolute outside limit on when a medical malpractice action may be initiated, regardless of when the injury is discovered. *See generally Border v. Indian Head Industries, Inc.*, 101 Or App 556, 562-63, 792 P2d 111, *rev den* 310 Or 475 (1990) (explaining distinction between statutes of limitation and ultimate repose).

"An equal privileges analysis in this context under Article I, section 20, requires us to determine: (1) whether the legislature had authority to act; (2) whether one class of persons receives privileges that the other does not; and (3) whether the disparate treatment had a rational basis." *Crocker and Crocker*, 332 Or 42, 54, 22 P3d 759 (2001), *citing Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 467, 814 P2d 1060 (1991).[3]

Plaintiff makes no argument that the legislature lacked authority to enact ORS 12.110(4). Plaintiff argues that ORS 12.110(4) grants privileges to a certain class of individuals that is not available to all on equal terms, and that the disparate treatment lacks a rational basis. Defendant responds that any distinction drawn by ORS 12.110(4) is not based on any "true class," and that, in all events, any distinction has a rational basis.

Two decisions frame our analysis. In *Sealey v. Hicks*, 309 Or 387, 788 P2d 435, *cert den* 498 US 819 (1990), the plaintiff asserted, in part, that the eight-year repose provision for product liability actions, ORS 30.905(1), violated Article I, section 20. The plaintiff posited three "classes":

"(1)   Persons injured by products more than eight years after their initial sale, contrasted with persons injured by products sold more recently;

"(2)   Potential tortfeasors who injure their victims with eight-year-old manufactured products, contrasted with tortfeasors who injure their victims in other ways; and

"(3)   Persons injured by products, contrasted with those persons injured by other causes." *Sealey*, 309 Or at 397.

The court concluded that (1) and (2) did not describe "true classes" for purposes of Article I, section 20, in that their alleged distinctiveness was dependent upon the eight-year statutory limitation and, thus, was " 'created by the challenged law itself.' " *Id.* (quoting *State v. Clark*, 291 Or 231, 240, 630 P2d 810 (1981)). Conversely:

---

[3] Where a distinction is drawn based on an immutable characteristic, classifications are subject to higher scrutiny than "rational basis." *Crocker*, 332 Or at 55, *citing Hewitt v. SAIF*, 294 Or 33, 45, 653 P2d 970 (1982).

"The third class does exist apart from the statute. Whether an individual is injured by a manufactured product or in some other fashion is not dependent upon the terms of the statute. Nevertheless, the legislature has the authority to decide, for example, that increases in insurance rates or other costs associated with litigation warrant legislation to limit the liability of manufacturers in order to ensure the continued availability of manufactured goods at a reasonable cost." *Sealey*, 309 Or at 397-98.

In *Jones v. Salem Hospital*, 93 Or App 252, 762 P2d 303 (1988), *rev den* 307 Or 514 (1989), we considered, *inter alia*, whether the application of ORS 12.110(4) to bar a malpractice action brought on behalf of a minor violated Article I, section 20. The plaintiff argued that minors who were victims of torts of other kinds could avail themselves of the general tolling provision of ORS 12.160,[4] but that minors who were victims of medical malpractice were limited, under ORS 12.110(4), to bringing their claims within five years, regardless of their minority. *See* ORS 12.110(4) ("However, notwithstanding the provisions of ORS 12.160, every action shall be commenced within five years from the date of the treatment * * *.").[5] Thus, the plaintiff asserted, the application of ORS 12.110(4) irrationally distinguished between minors who were victims of medical malpractice and minors who were victims of other torts. We rejected that argument:

"ORS 12.110(4) treats all medical malpractice plaintiffs identically, be they adults or minors. The fact that ORS 12.160 gives minors and others under disability longer periods than the general population enjoys within which to

[4] ORS 12.160 provides:

"If, at the time the cause of actions accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276 is within the age of 18 years or insane, the time of such disability shall not be part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, not shall it be extended in any case longer than one year after such disability ceases."

[5] In *Jones*, the plaintiff was born in May 1979, and the medical malpractice action, which alleged negligence between February 1979 and May 1979, was brought over six years later, in October 1985. If the tolling provisions of ORS 1⌐.⸝60 had been available, plaintiff would have had seven years to bring the ac  —the two-year limitation period for malpractice actions, ORS 12.110(4), plus th〔 ₐximum five-year tolling for minority under ORS 12.160.

bring claims of other kinds does not, in itself, preclude the legislature from establishing a uniform limitation period for all malpractice plaintiffs. * * * If the legislature has created classifications among minors by making the ORS 12.160 classification between them and non-incapacitated adults inapplicable to medical malpractice cases, there is adequate rational support for its having done so. Oregon Laws 1975, chapter 796, which made ORS 12.160 inapplicable to the repose provisions of ORS 12.110(4), *see* section 10a, was enacted in response to the so-called 'medical malpractice crisis.' We are not prepared to say that the classification lacks a rational basis or a rational relationship to the purpose of the statute which creates it. Plaintiff challenges the legislature's assumptions and the evidentiary basis for the distinction created by the 1975 amendment; but, as we said in *Davis v. Whiting Corporation*, [66 Or App 541, 674 P2d 1194, *rev den* 297 Or 82 (1984)]:

> " 'Contrary to the thrust of plaintiff's approach, we do not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations.' 66 Or App at 544.' " *Jones*, 93 Or App at 258-59.

Here, plaintiff acknowledges *Sealey* and *Jones* but contends that they are not controlling because they addressed different types of "classes" from those plaintiff now posits. In particular, whereas *Sealey* ultimately addressed the distinction between product liability victims and the victims of all other torts, and *Jones* addressed a distinction between minor victims of medical malpractice and minor victims of all other torts, plaintiff here argues that the decedent was a member of a "true class" within the broader class of all medical malpractice victims: "a subclass consisting of victims of negligent misdiagnosis of diseases with long latency periods." Plaintiff contends that that class "exists regardless of the passage of a statute" and that application of ORS 12.110(4) irrationally differentiates between "long latency period" malpractice victims and other malpractice victims, in that the latter suffer injuries that are knowable (and, thus, actionable) within the five-year repose period, and the former do not.[6]

---

[6] Plaintiff asserts that, because "[a]ccess to the courts is a fundamental right in Oregon," the applicable test should be "strict scrutiny" and not "rational basis." However, plaintiff concedes that, under *Sealey*, "the Oregon Supreme Court

Plaintiff further, and alternatively, argues that ORS 12.110(4) impermissibly distinguishes between putative malpractice plaintiffs who did not discover their claims and bring their actions within five years because of "diseases with long latency periods" and putative malpractice plaintiffs who did not discover their claims and bring their actions within five years because of fraudulent concealment. The former are barred by the statute of ultimate repose; the latter are not. *See* ORS 12.110(4).

We reject plaintiff's arguments because, despite plaintiff's best efforts, *Sealey* and *Jones* cannot be materially distinguished. Assuming, without deciding, that "victims of misdiagnosis of diseases with long latency periods" comprise a "true class" for purposes of Article I, section 20—and further assuming that the decedent was a member of that class—plaintiff's constitutional position depends on the premise that (in plaintiff's words): "[I]t is the discrimination within the class of medical malpractice victims by granting access to the court to certain victims and denying it to others that runs afoul of the privileges and immunities clause." But that is precisely the sort of distinction that *Sealey* and *Jones* sustained.

In *Sealey*, for example, some persons injured by defective products could bring actions to recover for their injuries, but others were precluded. The reasons for that distinction could be described, variously, as a function of the statute itself (the statutory time limit) or as a function of circumstances extrinsic to the statute, *viz.*, that in one instance, the product injured someone in Year 1, and in another instance, the product injured someone in Year 9. However viewed, the product liability ultimate repose statute in *Sealey* had the practical effect of distinguishing among the class of victims and, in so doing, precluding actions by persons whose claims were unknowable within the repose period. The Supreme Court concluded that that distinction—the "vice" that plaintiff urges—did not offend Article I, section 20. That holding is dispositive here.

---

appears to have adopted a rational basis test in such situations" and that "[t]his court is bound by that precedent."

We turn to plaintiff's Article I, section 10, argument. Article I, section 10, of the Oregon Constitution, provides, in pertinent part, that "every man shall have remedy by due course of law for injury done him in his person, property or reputation." At the time this case originally was briefed and argued, Oregon appellate courts had, on numerous occasions, upheld the constitutionality of statutes of ultimate repose in the face of Article I, section 10, challenges. *See, e.g., Sealey*, 309 Or at 393-96; *Johnson v. Star Machinery*, 270 Or 694, 530 P2d 53 (1974); *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971); *Davis v. Whiting Corporation*, 66 Or App 541, 543-44, 674 P2d 1194, *rev den* 297 Or 82 (1984). The gist of the holdings in those cases was that it was a "proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purposes of protecting a recognized public interest." *Josephs*, 260 Or at 503.

After oral argument in this case, however, the Supreme Court decided *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001). The court traced the line of reasoning embodied in cases such as *Sealey* and *Josephs* back to *Perozzi v. Ganiere*, 149 Or 330, 40 P2d 1009 (1935), which had adopted it from *Silver v. Silver*, 280 US 117, 50 S Ct 57, 74 L Ed 221 (1929), a case involving equal protection under the Fourteenth Amendment to the United States Constitution. *Smothers*, 332 Or at 116-18. The court went on to reject that line of cases:

"[T]he history of the remedy clause indicates that its purpose is to protect absolute common-law rights respecting person, property, and reputation, as those rights existed when the Oregon Constitution was drafted in 1857. The means for protecting those rights is the mandate that remedy by due course of law be available in the event of injury. Until 1935, this court's case law was consistent with that historical purpose. In *Perozzi*, this court erroneously relied on the United States Supreme Court's interpretation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in *Silver* to hold that Article I, section 10, does not forbid the legislature from abolishing absolute rights respecting person, property, or reputation that existed when the Oregon Constitution was adopted." *Id.* at 118-19.

The court disavowed its line of cases based on the *Perozzi* rationale and concluded that "[t]he legislature lacks authority to deny a remedy for injury to absolute rights that existed when the Oregon Constitution was adopted in 1857." *Id.* at 119, *citing Mattson v. Astoria*, 39 Or 577, 580, 65 P 1066 (1901). Among the cases disavowed by the Supreme Court in *Smothers* are *Sealey* and *Josephs*, on which defendant relied in the trial court and in this court for the proposition that the statute of ultimate repose contained in ORS 12.110(4) does not violate Article I, section 10.

In supplemental briefing, defendant acknowledges this shift in the law, but contends that ORS 12.110(4) nonetheless does not violate Article I, section 10, as applied to the present case, for two reasons. First, according to defendant, the court's shift in Article I, section 10, analysis does not undermine the court's statements, on numerous occasions, that there was no common-law action for wrongful death. Thus, defendant reasons, because plaintiff's claim was converted to a wrongful death claim after Barke's death, it could not have been a claim based on an absolute right that existed when the Oregon Constitution was adopted. Alternatively, defendant argues that, even if plaintiff's action did exist at the time the Oregon Constitution was adopted, it would have been subject to a statute of limitations that embodied a repose provision not unlike the one in ORS 12.110(4).

As to defendant's first argument—that no wrongful death action existed at common law and, thus, this action involves no right protected by Article I, section 10, plaintiff argues that there was, in fact, a "survival" statute in place at the time the Oregon Constitution was adopted that permitted a cause of action to continue after the death of a party. Plaintiff asserts that, because an action such as the decedent's medical malpractice action could have been brought at the time of the adoption of the Oregon Constitution, and could have been continued after his death pursuant to the survival statute, Article I, section 10, does provide protection. As plaintiff acknowledges, the Oregon Supreme Court has, on more than one occasion, held that there was no action for wrongful death at the time the Oregon Constitution was adopted, without reference to the survival statute. Plaintiff

suggests that the Oregon Supreme Court's findings of historical fact in those cases should be viewed as applying only to wrongful death actions initiated after a death, and not to a situation such as this, where the plaintiff dies as the result of the allegedly tortious action after the commencement of the lawsuit.

That issue is intriguing. But we need not, and do not, decide it here because defendant's second argument is dispositive.

Defendant is correct that, at the time the Oregon Constitution was enacted, plaintiff's action would have been subject to—and would have been barred by—a statute of limitations that also acted as a statute of repose because it contained no "discovery rule." Historically, a cause of action was viewed as accruing at the time of the occurrence of the tortious act. *See generally* Calvin W. Corman, *2 Limitation of Actions* § 11.1, 134-35 (1991). In tort actions in the nineteenth century, "the established rule in such cases is, that the statute begins to run from the breach of duty, and not from the damage occasioned thereby." J. K. Angell, *A Treatise on the Limitations of Actions at Law and Suits in Equity and Admiralty*, ch XXVIII, § 298 (5th ed 1869).

In an act passed in January 1854, the Oregon territorial legislature enacted various statutes of limitation, one of which required most actions for personal injury to be commenced within six years from the date that the action accrued.[7] Statutes of Oregon 1854, Act for the Limitation of Actions, ch 1, § 4, p 171. The 1854 enactment contained only one limited "discovery rule" exception, providing that actions for fraud were "not to be deemed to have accrued, until the discovery by the aggrieved party of the facts constituting the fraud." *Id.* The 1854 enactment appears to be substantially similar to most other statutes of limitation from the mid-nineteenth century. *See* H. G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity*, ch XXII, §§ 275-76 (discussing discovery rule only in context of fraud) (1983);

---

[7] Actions for assault, battery and false imprisonment had a shorter limitation period. Statutes of Oregon 1854, Act for the Limitation of Actions, ch 1, § 6, p 171.

Angell, *Limitations of Actions*, ch XXVII, § 183-85 (the discovery rule was well established in equitable cases involving fraud, but jurisdictions were in conflict as to whether there was a fraud discovery exception in actions at law).

The discovery rule, as applied to medical malpractice actions, was primarily a judicial creation of the 1950s and 1960s. Corman, *2 Limitation of Actions* § 11.1.2.1 (citing cases). The Supreme Court followed the trend in applying a discovery rule to medical malpractice when it decided *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), holding that the cause of action did not accrue until the harm was discovered. In *Berry,* the court openly acknowledged that it was not taking a historical approach,[8] and instead, looked to other jurisdictions and discerned and followed a modern trend in favor of discovery rules in medical malpractice cases. *Id.* at 313-15. It is clear from the cases cited in *Berry,* as well as from the cases cited in the earlier decision of *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964), which reached the opposite result, that the discovery rule as applied to medical malpractice actions was a twentieth-century creation. *See also Shasta View Irrigation Dist. v. Amoco Chemicals,* 329 Or 151, 184 n 15, 986 P2d 536 (1999) (Durham, J., concurring in part and dissenting in part) ("early statutes of limitation shared more than a semantic similarity to modern statutes of repose, especially in their objective of bringing an end to potential litigation through the expiration of time").

In short, we are aware of no precedent, either common law or statutory, that would indicate that the territorial legislature that enacted the 1854 statute of limitations intended to embody a discovery rule within the statute as to any cause of action other than one based on fraud. There is no basis to assume that the remedy provision of Article I, section 10, enacted several years later, was intended to give plaintiffs a right to commence actions that were barred under then-existing statutes of limitation.

Thus, even assuming that plaintiff is correct that this wrongful death action is more properly viewed as a survival action and thus is a type of action that the remedies

---

[8] The court, in fact, faulted its earlier case, *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964), for placing too much emphasis on the history of the statute and overruled that case. *Berry,* 245 Or at 310, 316.

clause protects, and even assuming that the remedies clause goes so far as to protect not only causes of action but the rules governing the accrual of causes of action as they existed at the time of the enactment of the Oregon Constitution, the remedies clause nonetheless would not guarantee plaintiff the right to initiate a personal injury action based on negligent acts that occurred some seven years before the action was initiated. In short, plaintiff's action would have been time barred under the law as it existed at the time that Article I, section 10 was enacted, just as it is barred under current law.

The trial court correctly concluded that ORS 12.110(4) is not unconstitutional as applied to plaintiff.

Affirmed.