Argued and submitted March 10, affirmed December 27, 2006

Kelly CHRISTIANSEN,
Conservator for James Carrier,
a Minor,
*Appellant,*

*v.*

PROVIDENCE HEALTH SYSTEM OF
OREGON CORPORATION,
dba St. Vincent Hospital & Medical Center,
an Oregon business;
and Randi R. Ledbetter, M.D.,
*Respondents.*

0301-00634; A122603

150 P3d 50

Kathryn H. Clarke argued the cause for appellant. With her on the brief was John E. Uffelman.

Michael T. Stone argued the cause and filed the joint brief for respondent Providence Health System of Oregon Corp., dba St. Vincent Hospital & Medical Center. Lindsey H. Hughes argued the cause and filed the joint brief for respondent Randi R. Ledbetter.

Before Edmonds, Presiding Judge, and Linder, Judge, and Barron, Judge pro tempore.*

BARRON, J. pro tempore.

---

* Barron, J. pro tempore, *vice* Wollheim, J.

**BARRON, J. pro tempore**

Plaintiff Kelly Christiansen, the mother and conservator of the estate of her minor child, James Carrier, appeals from a judgment dismissing her medical negligence action on the ground that it was barred by the ultimate repose provision of ORS 12.110(4). Plaintiff argues that the application of that provision to her claims violates the Remedy Clause, Article I, section 10, of the Oregon Constitution. For the reasons set forth below, we affirm the trial court's dismissal.

In reviewing a grant of a motion to dismiss, we assume the truth of all allegations in the complaint, as well as any inferences that may be drawn, and view them in the light most favorable to the nonmoving party. *Barke v. Maeyens*, 176 Or App 471, 473, 31 P3d 113 (2001), *rev den*, 333 Or 655 (2002). The complaint alleges that defendants, a hospital and an obstetrician, failed to recognize signs of fetal distress and maternal infection during plaintiff's labor on March 14, 1994, and, as a result, negligently delayed performing a cesarean section delivery of the child. Immediately after delivery, the child was "floppy and unresponsive," "required neonatal resuscitation[,] and suffered his first seizure within eight hours of his birth." He was discharged approximately one week later; at that time, his "physicians stated that a cranial ultrasound and CT Scan of the brain did not show any evidence of abnormality. An EEG taken then was mildly abnormal, but not specific."

Approximately three months after the child's birth, Dr. James R. Schimschock of the Child Neurology Clinic told plaintiff that the child had been "developing normally" and gave him a "good prognosis." On or about May 11, 1999, Schimschock "noted that [the child] had seemed to make his motor landmarks at appropriate intervals" but diagnosed mixed developmental disorder, developmental speech or language disorder, and partial epilepsy. Schimschock referred the child to Dr. Jay Edwards for further evaluation. Edwards examined the child on June 2, 1999, and noted that the child "reached his early developmental milestones, but was beginning to show signs of neurological deficits, relating to an anoxic event in-utero."

Although plaintiff alleged that she was generally aware of the course of events leading up to the cesarean section, she did not allege that she knew that the child was "floppy and unresponsive" after birth, that he needed neonatal resuscitation, or that he had a seizure within eight hours of the cesarean section delivery.[1] Within six to eight months after delivery, plaintiff "suspected that there may have been negligence in the medical care provided" during the labor and delivery, "but at the time there were no known permanent injuries to" the child. Plaintiff contends that she did not learn of the child's permanent injuries until May 11, 1999, when Schimschock diagnosed the child as having several neurological disorders.

Plaintiff filed this action against defendants in January 2003, more than five years after the child's birth on March 14, 1994, but less than five years after she allegedly discovered the existence and nature of his injuries in May 1999. In lieu of filing an answer, defendants moved to dismiss the complaint, pursuant to ORCP 21 A(9),[2] as barred by either the statute of limitations (because the complaint alleges that plaintiff "suspected * * * negligence" six to eight months after the delivery) or by the statute of ultimate repose. *See* ORS 12.110(4).[3] Plaintiff contended that the suit was filed less than five years after she discovered the child's

---

[1] In framing the issues before us, the parties assume that plaintiff's knowledge is relevant for purposes of the discovery rule and make no distinction between information that she learned in her capacity as conservator and her capacity as child's mother. For purposes of analysis, we assume—as do the parties—that the information known to plaintiff is relevant for purposes of triggering the statute of limitations, but we express no opinion as to the validity of that assumption. *Compare Banda v. Danner*, 87 Or App 69, 741 P2d 514 (1987), *aff'd by equally divided court*, 307 Or 302, 766 P2d 385 (1988), *with Perez v. Bay Area Hospital*, 315 Or 474, 846 P2d 405 (1993).

[2] ORCP 21 A(9) provides that a defense may be made by a motion to dismiss if "the pleading shows that the action has not been commenced within the time limited by statute."

[3] ORS 12.110(4) provides, in part:

"An action to recover damages for injuries to the person arising from any medical * * * treatment * * * shall be commenced within two years from the date when the injury is *first discovered* or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment[.]"

(Emphasis added.)

injuries, as required by ORS 12.160,[4] and that application of ORS 12.110(4) to her claims violates Article I, section 10, of the Oregon Constitution (the Remedy Clause).[5] The trial court dismissed the complaint with prejudice, ruling that it was barred by ORS 12.110(4) and holding that ORS 12.110(4) is not unconstitutional by reason of violating Article I, section 10, of the Oregon Constitution.

■    We first address defendants' subconstitutional argument that plaintiff's claims are barred by the two-year statute of limitations, ORS 12.110(4), for claims based on medical negligence. *See Ainsworth v. SAIF*, 202 Or App 708, 711-13, 124 P3d 616 (2005), *rev den*, 341 Or 216 (2006) (explaining that courts must consider subconstitutional arguments before reaching constitutional questions). Defendants contend that the allegation that, within six to eight months after the child's birth, plaintiff "suspected that there may have been negligence in the medical care provided to [her]" during the birth can be construed to mean only that she knew or should have known of facts that would make a reasonable person aware of the substantial possibility of the allegedly tortious conduct.[6] We disagree. Construing the complaint in the light most favorable to plaintiff, as we must, *Barke*, 176 Or App at 473, we conclude that plaintiff merely "suspected" tortious conduct within six to eight months after the child's

---

[4] ORS 12.160 provides, in part:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS * * * 12.070 to 12.250 * * * is within the age of 18 years * * *, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability[.]"

Plaintiff, who, as conservator, acquires the benefit of the disability statute, *Luchini v. Harsany*, 98 Or App 217, 779 P2d 1053, *rev den*, 308 Or 608 (1989), claims that she did not first discover the child's injuries until May 1999, at which time her cause of action accrued under ORS 12.110(4), giving her five years under ORS 12.160—until May 2004—to commence her action. Defendant does not dispute the legal analysis of the application of ORS 12.110(4) and ORS 12.160.

[5] The Remedy Clause provides in pertinent part that "every man shall have remedy by due course of law for injury done him in his person, property or reputation." Or Const, Art I, § 10.

[6] Defendants argue that, at the latest, plaintiff should have known of the child's injury in November 1994 and, therefore, under ORS 12.160, the statute of limitations expired in November 1996 and, even if the five-year disability period allowed in ORS 12.160 is tacked on to the two-year period allowed in ORS 12.110(4), the statute of limitations expired in November 2001.

birth and that she did not discover the child's injuries for purposes of the statute of limitations until May 1999. The existence of such a suspicion will not start the statute of limitations running. *See Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994) (holding that a statute of limitations will not begin to run if a plaintiff has only a "mere suspicion" of legal injury, but it will begin to run if the plaintiff was or should have been aware of a "substantial possibility" of legal injury). Accordingly, under ORS 12.160, plaintiff had until five years from May 1999 within which to bring the claim. As noted, however, under ORS 12.110(4), the statute of ultimate repose, notwithstanding ORS 12.160, *every* action must be commenced within five years of the date of treatment. In this case, the statute of ultimate repose bars plaintiff's claim because it was not brought within five years of March 14, 1994.

■    We must next consider whether application of the statute of ultimate repose violates the constitutional guarantees of the Remedy Clause. Although both this court and the Oregon Supreme Court have previously upheld statutes of ultimate repose against Remedy Clause challenges, *see Johnson v. Star Machinery Co.*, 270 Or 694, 530 P2d 53 (1974); *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971); *Davis v. Whiting Corporation*, 66 Or App 541, 674 P2d 1194, *rev den*, 297 Or 82 (1984), *Jones v. Salem Hospital*, 93 Or App 252, 762 P2d 303 (1988), *rev den*, 307 Or 514 (1989), we have not squarely addressed the issue in light of *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001).[7]

■    The *Smothers* court adopted an analysis that evaluates a challenged statute in terms of the purpose the drafters of the Oregon Constitution had in adopting the Remedy Clause: to preserve absolute common-law rights respecting

---

[7] In *Barke,* a post-*Smothers* case, the plaintiff asserted that application of the statute of ultimate repose to a wrongful death claim was a violation of her rights under Article I, section 10, and Article I, section 20, of the Oregon Constitution. We did not need to address the defendant's contention that a wrongful death action did not exist at common law because we concluded that, at common law, there was no rule of discovery, and the plaintiff's claim would have been subject to and barred by the statute of limitations, which also served as a statute of ultimate repose. 176 Or App at 481-82.

person, property, and reputation that existed when the constitution was adopted in 1857.

> "[T]he first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

332 Or at 124. Because we decide that ORS 12.110(4), as applied to the claim before the court, does not abolish a common-law cause of action that existed in 1857, we answer "no" to the first question posed by *Smothers* and, therefore, need not address the second question.

Under *Lawson v. Hoke*, 339 Or 253, 259, 119 P3d 210 (2005), we are enjoined to identify the circumstances of the case that are pertinent to the inquiry of whether the common law recognized a claim. *See Smothers*, 332 Or at 129 (framing the relevant inquiry as "whether, at common law in Oregon in 1857, an employee would have had a cause of action against an employer for failure to provide a safe workplace and failure to warn of dangerous working conditions"); *see also Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 144 P3d 211 (2006) (considering whether the Remedy Clause protected a loss of consortium claim brought by a parent and adult children of a person who was killed as the result of the negligence of the person's employer); *Lawson*, 339 Or at 259-60 (examining not only whether the right to recover noneconomic damages resulting from an accident on a public road caused by another's negligence existed in 1857, but also whether, at that time, such a remedy could have been conditioned on whether the injured driver was licensed to be at the place where her injury occurred).

There is no dispute that a cause of action for medical negligence existed in 1857. *See, e.g., Langford v. Jones*, 18 Or

307, 22 P 1064 (1890).[8] Plaintiff's claim is brought on behalf of her minor child for prenatal injuries that she claims were caused by medical negligence. The question, therefore, in this case is whether a claim for prenatal injuries caused by medical negligence was recognized by the common law of Oregon, or any other jurisdiction, around the time the Oregon Constitution was adopted. Defendants cite *Dietrich v. Northampton*, 138 Mass 14, 1884 WL 4976 (1884), the first American case to consider whether an infant could recover for prenatal injuries negligently inflicted. In addressing the issue, Justice Oliver Wendell Holmes, writing for the court, stated, "But no case, so far as we know, has ever decided that, if the infant survived [an accident or injury that befell the mother], it could maintain an action for injuries received by it while in its mother's womb." *Id.* at 15; *see also Allaire v. St. Luke's Hospital*, 184 Ill 359, 368, 56 NE 638 (1900) ("[S]o far as we have been able to discover, [the legal fiction that an unborn child may be regarded as *in esse* for some purposes] has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth.").[9] Given that case law, we must agree with defendants that no such cause of action existed in 1857.

■     In the years immediately surrounding the adoption of the Oregon Constitution, no Oregon case addressed whether an infant injured during birth could maintain an action for medical negligence against the delivering

---

[8] An action for medical negligence was recognized at least as far back as the middle of the eighteenth century. 3 William Blackstone, *Commentaries on the Laws of England* 122 (1768).

[9] In *Allaire*, the Illinois Supreme Court followed *Dietrich*. Justice Boggs issued a strong dissent in which he wrote that "an adjudicated case is not indispensable to establish a right to recover under the rules of the common law," 184 Ill at 368, which he believed allowed recovery for a prenatal injury if the child was thereafter born alive under the general principle that a person could recover for an injury inflicted by another person. He further stated,

> "If, in delivering a child, an attending physician, acting for a compensation, should wantonly or by actionable negligence injure the limbs of the infant, and thereby cause the child, although born alive and living, to be maimed and crippled in body or members, it would be abhorrent to every impulse of justice or reason to deny to such a child a right of action against such physician to recover damages for the wrongs and injuries inflicted by such physician."

184 Ill at 373-74.

physician. The *Smothers* court has instructed that, where Oregon courts were silent in the years surrounding the creation of the Oregon Constitution, the state of the common law in 1857 may be ascertained from other sources, including cases from other jurisdictions. 322 Or at 129. Cases from other jurisdictions decided after the adoption of the Oregon Constitution—and for more than the next 60 years—followed *Dietrich,* despite the strong dissent in *Allaire. See* Roland F. Chase, Annotation, *Liability for Prenatal Injuries,* 40 ALR 3d 1222, § 2[a] (1971) (noting that *Dietrich* "set the tone of judicial opinion for the next 60 years" and that "courts were nearly unanimous in rejecting a right of action for prenatal injuries"). *But see id.* at § 2[a] n 10 (citing a handful of cases decided during the 1920s expressing the view that an infant could maintain an action for injuries it received as a viable fetus). Although *Dietrich*, which involved a nonviable fetus, arguably left open the question of whether a viable fetus might maintain an action for prenatal injuries, *see Williams v. Marion Rapid Transit, Inc.*, 152 Ohio St 114, 119, 87 NE2d 334 (1949), the vast majority of cases decided over the next 60 years—90 years after the adoption of the Oregon Constitution—failed to draw a distinction between viable and nonviable fetuses and, almost without exception, rejected the existence of a cause of action in tort for prenatal injuries. *See, e.g.*, *Allaire*, 184 Ill at 368 ("That a child before birth is, in fact, a part of the mother, and is only severed from her at birth, cannot, we think, be successfully disputed."); *see also* 40 ALR 3d 1222 § 1[a] n 5, § 2[a] (defining "prenatal," in accordance with case law, to include injuries resulting from birth trauma and noting that "[f]inally, in 1946 a United States District Court [in *Bonbrest v. Kotz,* 65 F Supp 138 (DCDC 1946)] squarely held that injuries to a viable unborn child are compensable in a tort action brought by the child after its birth").[10]

The first Oregon case to consider the question, *Mallison v. Pomeroy*, 205 Or 690, 291 P2d 225 (1955), was

---

[10] At oral argument, plaintiff's counsel contended that the child's injuries should be considered "natal" injuries rather than "prenatal" injuries, and that the type of injuries for which plaintiff seeks compensation are now termed "perinatal." How the injury would be described in modern parlance, however, is immaterial; we are concerned only with how Oregon courts might have characterized the injury in 1857.

decided nearly a century after the adoption of the Oregon Constitution. That fact significantly detracts from the weight the case should be given in a *Smothers* analysis, because *Mallison* was not decided "within a relatively short period after 1857." *Smothers*, 322 Or at 129. Plaintiff nevertheless argues that *Mallison* supports the existence of such a cause of action because the court suggested that a viable fetus should be considered a "person" protected by the Remedy Clause, 205 Or at 697 (citing *Williams*, 152 Ohio St at 128-29[11]), and favorably cited cases relying on common-law sources such as Blackstone and Lord Coke to support the existence of common-law rights of an unborn viable fetus. *Id.* at 694-97.

Regardless of whether we believe that *Dietrich* was wrongly decided, and regardless of whether we agree with the reasoning of *Mallison*, we cannot say that, in 1857, Oregon courts would have recognized a common-law cause of action under the circumstances of this case.[12] The weight of authority suggests otherwise,[13] and the *Mallison* court

---

[11] The issue in *Williams* was whether the infant plaintiff who was a viable fetus at the time of injury had a right of action under a Remedy Clause in the Ohio Constitution similar to Oregon's Remedy Clause. The court stated, "There can, of course, be no question that the plaintiff was a 'person' at the time this action was instituted." 152 Ohio St at 117. It also wrote, "No legislative action is required to authorize recovery for personal injuries caused by the negligence of another. Such right was one existing at common law." *Id.* at 128. The court in *Mallison* referred to the *Williams* case as "promulgating the so-called modern doctrine." 205 Or at 696.

[12] In *Juarez*, the court wrote,

"The court generally will reconsider common-law doctrines in three situations: (1) when an earlier case was 'inadequately considered or wrong when it was decided'; (2) when statutes or regulations have altered an 'essential legal element assumed in the earlier case'; or (3) when the earlier rule was based on specific facts that have changed."

341 Or at 168.

*Mallison* discussed *Dietrich* and the law as it existed before what it described as the modern view, which began to emerge in the *Bonbrest* case. *Mallison* did not question whether the "mother case," *Dietrich*, 205 Or at 691, gave birth to a principle of law that was inadequately considered or wrong when it was decided. It is not our place to make that decision, *see Lowe v. Philip Morris USA, Inc.*, 207 Or App 532, 544, 142 P3d 1079 (2006), but the Supreme Court in *Mallison* recognized that except for tort law, a fetus was acknowledged and given protection in other areas of the law at the time Oregon's Constitution was adopted. *Id.* at 692-96. A case in which the Supreme Court did revisit whether a cause of action existed at common law is *Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984) (parental immunity).

[13] The *Restatement of Torts*, § 869 (1939), reflected the prevailing view. It stated, "A person who negligently causes harm to an unborn child is not liable to such child for the harm."

acknowledged several facts that appear to settle the debate. First, although *Mallison* implied that viable fetuses should be considered "persons" under the Remedy Clause, and thus be allowed to sue for prenatal injuries, the case it cited in support of that proposition, *Williams*, explicitly acknowledged that the notion that an "infant is a part of the mother until birth and has no existence in law until that time" was a *"time-worn* fiction." 152 Ohio St at 129 (emphasis added). That observation suggests that the drafters of the Oregon Constitution did not intend to include fetuses, viable or not, within the protections of the Remedy Clause because it was generally accepted at that time that, for the purposes of tort law, an infant was part of the mother until the moment of its birth.[14]

Second, *Dietrich* is "[t]he mother case in this country" regarding whether a fetus may seek damages for injuries suffered while in its mother's womb. *Mallison,* 205 Or at 691. That is significant because Justice Holmes relied heavily on the utter lack of precedent recognizing such a cause of action to conclude that the common law afforded no remedy to the injured infant.[15] Although the *Mallison* court cited several

---

[14] As required by *Smothers,* we limit our analysis to whether in 1857 plaintiff could have maintained a common-law action for negligence under the circumstances of this case. Although the civil law considered an infant to have no legal status apart from its mother until the moment of its birth, Oregon's early legislators criminalized abortions not intended to preserve the life of the mother in 1864. *See* General Laws of Oregon, Crim Code, ch II, § 513, p 407 (Deady & Lane 1843-1872) ("If any person shall administer to any woman pregnant with child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case of death the such child or mother be thereby produced, be deemed guilty of manslaughter."). While Oregon's criminal law seemingly recognized the separate existence of a fetus from its mother, as did Blackstone, 4 William Blackstone, *Commentaries on the Laws of England* 198 (1769), the law of negligence did not. The law of negligence, though, was more forgiving to women in that, in some cases, it allowed them to sue third parties for aborting or attempting to abort a fetus. *See* Leslie Reagan, *Victim or Accomplice?: Crime, Medical Malpractice, and the Construction of the Aborting Woman in American Case Law, 1860-1970,* 10 Colum J Gender & L 311 (2001).

[15] *Dietrich* was affirmed in *Bliss v. Passanesi,* 326 Mass 461, 95 NE2d 206 (1950), but in *Keyes v. Construction Service, Inc.,* 340 Mass 633, 637, 165 NE2d 912 (1960), the court wrote,

"We think it advisable that in respect to the subject of prenatal injury the law of this Commonwealth should be in general in harmony with that of the large and growing proportion of the other States which have adopted in principle the rule proposed by Judge Boggs. *There is no need to reverse the Dietrich decision*

sources criticizing *Dietrich*'s reliance on lack of precedent because " 'a more accurate statement * * * would have been that there was no English authority on either side of the question,' " *Mallison*, 205 Or at 693-94 (quoting *Amann v. Faidy*, 415 Ill 422, 429, 114 NE2d 415, 416 (1953), which overruled *Allaire* and, in effect, adopted the reasoning of Judge Boggs's dissent), and thus " '[t]here is nothing in the common law denying such a right to the child,' " *id.*, 205 Or at 695 (quoting *Tucker v. Howard L. Carmichael & Sons, Inc.*, 208 Ga 201, 206, 65 SE2d 910 (1951)), those criticisms do not undermine our analysis. *Smothers* requires us to consider whether the right to maintain the common-law cause of action at issue was " '*well established* prior to the enactment of our Constitution.' " 332 Or at 116 (quoting *Stewart v. Houk et al.*, 127 Or 589, 591, 271 P 998, *on reh'g*, 127 Or 589, 272 P 893 (1928)) (emphasis added). The fact that a cause of action was not foreclosed by the common law does not demonstrate that it was well established, and in fact suggests the opposite—a question cannot be answered before it is asked. *See Allaire*, 184 Ill at 367 ("While it is true that [a lack of precedent] is not conclusive that the action may not be maintained, yet, in view of the fact that * * * similar circumstances must have before occurred, it is entitled to great weight, especially when the right to maintain the action is, to say the least, doubtful.").

Finally, Justice Holmes considered both Lord Coke's statement that criminal liability might attach to one who injures a viable fetus and Blackstone's observation that a child in its mother's womb is considered *in esse* for certain legal purposes—both relied on in the opinions cited in *Mallison* in support of the existence of a cause of action—but nevertheless concluded that those sources did not dictate whether an infant could maintain a tort action for injuries received in its mother's womb:

"[The question of] whether an infant dying before it was able to live separated from its mother could be said to have

---

which doubtless was right when rendered but we recognize that in view of modern precedent its application should be limited to cases where the facts are essentially the same."

(Emphasis added.) The limitation was removed seven years later in *Torigian v. Watertown News Co.*, 352 Mass 446, 448-49, 225 NE2d 926 (1967).

> become a person recognized by the law as capable of having a *locus standi* in court, or of being represented there by an administrator * * * would not be disposed of by citing those cases where equity has recognized the infant provisionally while still alive *en ventre*. And perhaps not by showing that such an infant was within the protection of the criminal law."

138 Mass at 16-17 (citations omitted). *Allaire*, which considered whether an infant injured in his mother's womb four days prior to his birth could maintain a tort action in his name, further indicates that the common-law sources relied upon in *Mallison* would not have been interpreted in 1857 to establish the existence of a negligence action under the circumstances of this case. 184 Ill at 367 (quoting *Walker v. Great Northern Railway Co.*, 28 LR (Ir) 69 (1891)) (" 'As Lord Coke says, the plaintiff was then *pars viscerum matris* [part of his mother's body], and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise toward that which was not *in esse* in fact, and has only a fictitious existence in law, so as to render a negligent act a breach of duty.' ").

Because plaintiff would not have had an absolute common-law right to bring an action in negligence for the child's prenatal injuries in 1857, our inquiry ends here. ORS 12.110(4) is not unconstitutional as applied to plaintiff's claims.

Affirmed.